**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILDEARTH GUARDIANS; and PHYSICIANS FOR SOCIAL RESPONSIBILITY,<br><br>      Plaintiffs,<br><br>v.<br><br>DEB HAALAND,[1] Secretary, U.S. Department of the Interior; and U.S. BUREAU OF LAND MANAGEMENT,<br><br>      Defendants. | No. 1:21-cv-00175-RC |

**MOTION OF THE AMERICAN PETROLEUM INSTITUTE FOR LEAVE TO INTERVENE AS A DEFENDANT**

Steven J. Rosenbaum
 D.C. Bar No. 331728
Bradley K. Ervin
 D.C. Bar No. 982559
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone:  (202) 662-6000
Fax:  (202) 662-6291
srosenbaum@cov.com

March 26, 2021        *Attorneys for Applicant for Intervention*
                 *American Petroleum Institute*

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary of the Interior Deb Haaland has been automatically substituted for former Secretary David L. Bernhardt.

**TABLE OF CONTENTS**

INTRODUCTION AND BACKGROUND ...................................................................................... 1

    A.    Plaintiffs' Legal Challenge. ................................................................................... 1

    B.    API's Interests in Plaintiffs' Legal Challenge. ..................................................... 2

I.     API IS ENTITLED TO INTERVENE AS OF RIGHT. ............................................................ 3

    A.    API Has Timely Moved For Intervention. ............................................................ 4

    B.    API Possesses A Cognizable Interest That May Be Impaired Or Impeded
         As A Result Of This Proceeding. ......................................................................... 4

    C.    API's Interests Will Not Be Adequately Protected By Plaintiffs Or
         Defendants. .......................................................................................................... 10

II.    IN THE ALTERNATIVE, API QUALIFIES FOR PERMISSIVE
     INTERVENTION UNDER RULE 24(b). .......................................................................... 12

CONCLUSION .............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Alaska v. Andrus*,
   580 F.2d 465 (D.C. Cir. 1978) ........................................................................ 10

*Amgen, Inc. v. Smith*,
   357 F.3d 103 (D.C. Cir. 2004) ......................................................................... 8

*Apotex, Inc. v. FDA*,
   508 F. Supp. 2d 78 (D.D.C. 2007) ................................................................. 11

*Atlantic States Legal Found., Inc. v. EPA*,
   325 F.3d 281 (D.C. Cir. 2003) ......................................................................... 7

*Bennett v. Spear*,
   520 U.S. 154 (1997) .......................................................................................... 8

*California ex rel. Lockyer v. United States*,
   450 F.3d 436 (9th Cir. 2006) ........................................................................... 5

*California v. Udall*,
   296 F.2d 384 (D.C. Cir. 1961) .................................................................... 8, 11

*California v. Watt*,
   668 F.2d 1290 (D.C. Cir. 1981) ..................................................................... 10

*California v. Watt*,
   712 F.2d 584 (D.C. Cir. 1983) ....................................................................... 10

*City of Waukesha v. EPA*,
   320 F.3d 228 (D.C. Cir. 2003) ......................................................................... 4

*Clarke v. Sec. Indus. Ass'n*,
   479 U.S. 388 (1987) .......................................................................................... 8

*Conservation Law Found. of New England v. Mosbacher*,
   966 F.2d 39 (1st Cir. 1992) .............................................................................. 9

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*,
   563 F.3d 466 (D.C. Cir. 2009) ....................................................................... 10

*Ctr. for Biological Diversity v. U.S. EPA*,
   937 F.3d 533 (5th Cir. 2019) ........................................................................... 3

*Ctr. for Biological Diversity v. U.S. Forest Serv.*,
   No. 17-cv-372 (S.D. Ohio Sept. 29, 2017) ..................................................... 3

*Ctr. for Sustainable Economy v. Jewell*,
   779 F.3d 588 (D.C. Cir. 2015) ......................................................................... 3

*Defenders of Wildlife v. Bur. of Ocean Energy Mgmt.*,
   684 F.3d 1242 (11th Cir. 2012) ....................................................................... 3

*Defenders of Wildlife v. Minerals Mgmt. Serv.*,
  No. 10-cv-254, 2010 WL 3169337 (S.D. Ala. Aug. 9, 2010)....................................... 3

*Dimond v. District of Columbia*,
  792 F.2d 179 (D.C. Cir. 1986) ................................................................................... 11

*Diné Citizens Against Ruining our Envt. v. Jewell*,
  No. 15-cv-209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015) ...................................... 3

*Envtl. Defense Ctr. v. Bur. of Safety & Envtl. Enforcement*,
  No. 14-cv-9281, 2015 WL 12734012 (C.D. Cal. Apr. 2, 2015 ................................... 3

*Fresno Mobile Radio, Inc. v. FCC*,
  165 F.3d 965 (D.C. Cir. 1999) ..................................................................................... 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*,
  528 U.S. 167 (2000) ...................................................................................................... 4

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ............................................................ 3, 6, 7, 9, 10, 11

*Gulf Restoration Network, et al. v. Nat'l Marine Fisheries Serv.*,
  No. 18-cv-1504 (M.D. Fla. Nov. 20, 2018 ................................................................... 3

*Gulf Restoration Network, et al. v. Zinke, et al.*,
  No. 18-cv-1674 (D.D.C. Dec. 7, 2018).......................................................................... 3

*Humane Society of the U.S. v. Clark*,
  109 F.R.D. 518 (D.D.C. 1985) ...................................................................................... 9

*Hunt v. Washington State Apple Adver. Comm'n*,
  432 U.S. 333 (1977)........................................................................................................ 4

*Idaho Power Co. v. FERC*,
  312 F.3d 454 (D.C. Cir. 2002) ..................................................................................... 8

*In re City of Fall River, Ma.*,
  470 F.3d 30 (1st Cir. 2006) ........................................................................................... 6

*Kleissler v. U.S. Forest Serv.*,
  157 F.3d 964 (3rd Cir. 1998) ...................................................................................... 12

*League of Conservation Voters v. Trump*,
  No. 17-cv-101 (D. Ak. July 21, 2017) .......................................................................... 3

*Military Toxics Project v. EPA*,
  146 F.3d 948 (D.C. Cir. 1998) .................................................................................. 6, 7

*Mobil Oil Exploration & Producing Southeast, Inc. v. United States*,
  530 U.S. 604 (2000) ...................................................................................................... 8

*Nat'l Lime Ass'n v. EPA*,
  233 F.3d 625 (D.C. Cir. 2000) ..................................................................................... 4

*Native Vill. of Chickaloon v. Nat'l Marine Fisheries Serv.*,
  947 F. Supp. 2d 1031 (D. Ak. 2013) .......................................................................... 10

iii

*Natural Res. Def. Council v. Costle*,
    561 F.3d 904 (D.C. Cir. 1977) ........................................................................... 9

*Natural Res. Def. Council, Inc. v. Hodel*,
    865 F.2d 288 (D.C. Cir. 1988) ......................................................................... 10

*Oceana v. Bur. of Ocean Energy Mgmt.*,
    37 F. Supp. 3d 147 (D.D.C. 2014) ..................................................................... 3

*Roeder v. Islamic Republic of Iran*,
    333 F.3d 228 (D.C. Cir. 2003) ........................................................................... 4

*Ross v. Marshall*,
    426 F.3d 745 (5th Cir. 2005) ............................................................................. 6

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ........................................................................... 5

*Sierra Club v. Glickman*,
    82 F.3d 106 (5th Cir. 1996) ............................................................................... 4

*Sierra Club v. U.S. EPA*,
    995 F.2d 1478 (9th Cir. 1993) ......................................................................... 10

*Suffolk Cnty. v. Sec'y of the Interior*,
    562 F.2d 1368 (2d Cir. 1977) .......................................................................... 10

*Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*,
    275 F.3d 432 (5th Cir. 2001) ............................................................................. 7

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ......................................................................... 4, 8

*The Wilderness Society v. Babbitt*,
    104 F. Supp. 2d 10 (D.D.C. 2000) ................................................................... 12

*\*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) .................................................................................... 10, 11

*Union Oil Co. v. United States*,
    512 F.2d 743 (9th Cir. 1975) ............................................................................. 8

*WildEarth Guardians v. Bernhardt, et al.*,
    No. 19-cv-00505 (D.N.M. Feb. 11, 2020) ......................................................... 3

*\*WildEarth Guardians v. Bernhardt*,
    No. 20-cv-00056, Dkt. No. 27 (D.D.C. May 14, 2020) ..................................... 3

*\*WildEarth Guardians v. Jewell*,
    No. 16-cv-1724 (D.D.C. Nov. 23, 2016) ....................................................... 2, 3

*Wilderness Workshop, et al. v. U.S. Bureau of Land Mgmt.*,
    No. 18-cv-987-WYD (D. Colo. Aug. 16, 2018) ............................................... 3

## **Statutes**

5 U.S.C. §§ 551, *et seq* ............................................................................................ 1

iv

30 U.S.C. § 181 ......................................................................................................................... 4

30 U.S.C. § 187 ......................................................................................................................... 4

42 U.S.C. § 4321 .............................................................................................................. 1, 8, 11

**<u>Rules</u>**

Fed. R. Civ. P. 24 .................................................................................................. 1, 3, 4, 6, 12, 13

**<u>Treatises</u>**

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*
    (3d ed. 2010) ..................................................................................................................... 13

**<u>Regulations</u>**

43 C.F.R. §§ 1610.1, *et seq.* .................................................................................................... 4

43 C.F.R. §§ 3160.0-1, *et seq.* ................................................................................................. 4

43 C.F.R., Part 3100 ................................................................................................................. 4

## INTRODUCTION AND BACKGROUND

Pursuant to Fed. R. Civ. P. 24, the American Petroleum Institute ("API") respectfully moves for leave to intervene in the above captioned matter.  Pursuant to Local Civil Rule 7(m), counsel for API consulted with counsel for Plaintiffs and the Federal Defendants regarding the relief requested herein.  Counsel for Plaintiffs has indicated that Plaintiffs take no position on API's intervention at this time, and reserve the right to file a response.  Counsel for the Federal Defendants has indicated that the Federal Defendants take no position on API's intervention request.

### A.    Plaintiffs' Legal Challenge.

This lawsuit challenges the approval of oil and gas leasing and the issuance of oil and gas leases through 28 lease sales on public lands in Colorado, New Mexico, Utah, and Wyoming conducted by Defendants Secretary of the Interior and the Bureau of Land Management ("BLM," collectively, the "Federal Defendants".  *See* Amend. Compl. (Dkt. No. 13), ¶ 1. Plaintiffs WildEarth Guardians and Physicians for Social Responsibility (collectively, "Plaintiffs") contend that the Federal Defendants' leasing actions violated the National Environmental Policy Act ("NEPA), 42 U.S.C. §§ 4321, *et seq*. and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq*., because they were allegedly taken "without fully analyzing the direct, indirect, and cumulative impacts of oil and gas leasing on our climate . . . ."  Amend. Compl., ¶ 1.  More specifically, Plaintiffs allege that "future development of unleased federal minerals" poses significant consequences for global climate, *id*., ¶ 3, and BLM conducts lease sales "without comprehensively estimating the cumulative [greenhouse gas ("GHG")] emissions from this development and analyzing the . . . resulting climate impacts . . .," *id*., ¶ 6.  In Plaintiffs' view, NEPA requires BLM to quantify direct, indirect, and cumulative GHG emissions from future potential oil and gas development before issuing leases.  *See id*., ¶ 7.

1

To remedy the alleged violations, Plaintiffs ask the Court to, *inter alia*, (1) "[d]eclare that Federal Defendants' leasing authorizations . . . violate NEPA"; (2) "[v]acate Federal Defendants' leasing authorizations"; (3) "[s]et aside and vacate all of the leases issued pursuant to the leasing authorizations challenged herein"; (4) "[e]njoin Federal Defendants from approving or otherwise taking action on any applications for permits to drill on the oil and gas leases challenged herein"; and (5) "[o]rder Federal Defendants to prepare and EIS" analyzing the challenged lease sales. *Id*., Requested Relief, ¶¶ A–E.

## B. API's Interests in Plaintiffs' Legal Challenge.

API is the primary national trade association of the oil and natural gas industry, representing approximately 600 companies involved in all aspects of that industry, including the exploration, production, shipping, transportation, and refining of crude oil. *See* Declaration of Kevin S. O'Scannlain, ¶ 1 ("O'Scannlain Decl.") (attached as Exhibit 2 hereto). Together with its member companies, API is committed to ensuring a strong, viable U.S. oil and natural gas industry capable of meeting the energy needs of our Nation in an efficient and environmentally responsible manner. *See* O'Scannlain Decl. ¶ 2.

API's members are deeply engaged in the exploration for and development of oil and gas resources as leaseholders, lease operators, and service companies, including in Colorado, New Mexico, Utah, and Wyoming. *See* O'Scannlain Decl. ¶¶ 5–9. To protect their interests, API is entitled to intervene in this action as of right, or, in the alternative, through permissive intervention. Indeed, this Court, the U.S. Court of Appeals for the D.C. Circuit, and federal courts elsewhere have routinely granted API's motions to intervene in lawsuits brought by plaintiffs challenging Governmental actions with respect to oil and gas activities, including two similar NEPA lease sale challenges filed by Plaintiffs in 2016 and 2020. *See WildEarth Guardians v. Jewell*, No. 16-cv-1724, Dkt. No. 19 (D.D.C. Nov. 23, 2016) (intervened in

2

challenges to lease sales in Colorado, Utah and Wyoming); *WildEarth Guardians v. Bernhardt*, No. 20-cv-00056, Dkt. No. 27 (D.D.C. May 14, 2020).[2]

## I.       API IS ENTITLED TO INTERVENE AS OF RIGHT.

Fed. R. Civ. P. 24(a) provides for intervention as of right if each of the following tests are met: (1) the motion is timely made, (2) the applicant claims a legally protectable interest relating to the property or transaction which is the subject of the action; (3) the interest could be impaired or impeded as a result of the litigation; and (4) existing parties do not adequately represent the applicant's interests.  Fed. R. Civ. P. 24(a); *see Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  API's intervention satisfies each of these criteria.[3]

---

[2] *See also*, *e.g.*, *Ctr. for Biological Diversity v. U.S. EPA*, 937 F.3d 533 (5th Cir. 2019) (intervened to EPA issuance of pollutant discharge permit); *Ctr. for Sustainable Economy v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) (challenge to five-year leasing program); *Defenders of Wildlife v. Bur. of Ocean Energy Mgmt.*, 684 F.3d 1242 (11th Cir. 2012) (challenge to lease sales and use of categorical exclusions to approve exploration plans); *WildEarth Guardians v. Bernhardt, et al.*, No. 19-cv-00505, Dkt. No. 36 (D.N.M. Feb. 11, 2020) (challenge to oil and gas lease sales); *Gulf Restoration Network, et al. v. Zinke, et al.*, No. 18-cv-1674, Dkt. No. 35 (D.D.C. Dec. 7, 2018) (same); *Gulf Restoration Network, et al. v. Nat'l Marine Fisheries Serv.*, No. 18-cv-1504, Dkt. No. 33 (M.D. Fla. Nov. 20, 2018) (challenge to agency delay in issuing Biological Opinion); *Wilderness Workshop, et al. v. U.S. Bureau of Land Mgmt.*, No. 18-cv-987-WYD, Dkt. No. 15 (D. Colo. Aug. 16, 2018) (challenge to oil and gas lease sales); *Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. 17-cv-372, Dkt. No. 52 (S.D. Ohio Sept. 29, 2017) (challenge to lease sales in Ohio); *League of Conservation Voters v. Trump*, No. 17-cv-101, Dkt. No. 22 (D. Ak. July 21, 2017) (challenge to presidential authority to resume oil and gas leasing on previously withdrawn lands); *WildEarth Guardians v. Jewell*, No. 16-cv-1724, Dkt. No. 19 (D.D.C. Nov. 23, 2016) (challenges to lease sales in Colorado, Utah and Wyoming); *Diné Citizens Against Ruining our Envt. v. Jewell*, No. 15-cv-209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015) (challenge to drilling permit approvals); *Envtl. Defense Ctr. v. Bur. of Safety & Envtl. Enforcement*, No. 14-cv-9281, 2015 WL 12734012 (C.D. Cal. Apr. 2, 2015) (same); *Oceana v. Bur. of Ocean Energy Mgmt.*, 37 F. Supp. 3d 147 (D.D.C. 2014) (challenge to lease sales); *Defenders of Wildlife v. Minerals Mgmt. Serv.*, No. 10-cv-254, 2010 WL 3169337 (S.D. Ala. Aug. 9, 2010) (challenge to lease sale).

[3] For purposes of applying Rule 24 requirements, API may assert the interests of its members. An association may act on behalf of its members when its members would otherwise have standing in their own right, the interests at stake are germane to the organization's purpose, and (continued…)

### A.      API Has Timely Moved For Intervention.

This motion to intervene is timely because it has been filed before the Federal Defendants have filed their answer, and before any non-ministerial action of the parties has taken place in this litigation other than the filing of the Complaint and Amended Complaint.

### B.      API Possesses A Cognizable Interest That May Be Impaired Or Impeded As A Result Of This Proceeding.

Oil and gas development on federal lands is carried out exclusively through private oil and gas companies, which acquire leases through a competitive bidding process and then engage in exploration efforts that, if successful, will lead to production.  *See, e.g.*, 30 U.S.C. §§ 181, 187; 43 C.F.R., Part 3100; O'Scannlain Decl. ¶ 5.   Operations for the exploration and development of oil and gas resources on a lease—including drilling—are conducted pursuant to plans and permits that must be approved by the BLM.  *See* 43 C.F.R. §§ 1610.1, *et seq*.; 43 C.F.R. §§ 3160.0-1, *et seq*.; O'Scannlain Decl. ¶ 8.

API members include leaseholders that have expended significant sums to obtain leases from the Government for the opportunity to explore for and develop valuable oil and gas

---

neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 181 (2000); *City of Waukesha v. EPA*, 320 F.3d 228, 233 (D.C. Cir. 2003).  API's showing that Fed. R. Civ. P. 24 standards are met in this case also establishes that its members would themselves have standing.  *See infra* pp. 4–10.  *E.g.*, *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001).   Representation in litigation is germane to API's overall purposes of advancing the interests of the oil and gas industry, and "mere pertinence between litigation subject and organizational purpose is sufficient."  *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 636 (D.C. Cir. 2000); *see also Sierra Club v. Glickman*, 82 F.3d 106, 108–10 (5th Cir. 1996) (goals of suit to limit farmers' water pumping germane to association purpose to advance farmers' interests); O'Scannlain Decl. ¶ 2.  It is not necessary for API members to be included in this case individually, especially because no monetary relief is being sought.  *See City of Waukesha,* 320 F.3d at 236; *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343–44 (1977).   API thus satisfies the three requirements of associational standing.

resources.  O'Scannlain Decl. ¶ 5.  At least one API member holds leases directly challenged by Plaintiffs in this action. *See* O'Scannlain Decl. ¶ 7.   API members are also directly engaged in the resulting exploration and production and have been for decades among the principal explorers and developers of leases throughout the United States, including in Colorado, New Mexico, Utah, and Wyoming.  *See* O'Scannlain Decl. ¶ 8.

Plaintiffs' claims that the Federal Defendants' decisions to conduct the challenged leases failed to meet NEPA's directive to take a "hard look" at the alleged environmental impacts of future exploration and drilling activities on issued leases, *see*, *e.g.*, Amend. Compl., ¶¶ 136–43, and the Court should therefore void all of the leases issued during the twenty-eight challenged lease sales or enjoin issuance of all drilling permits on the challenged leases, *see id.*, Relief Requested, ¶¶ C–D, thus directly affects API members' property and contractual interests. O'Scannlain Decl. ¶¶ 5–10.   At a minimum, the requested injunction pending a potentially lengthy NEPA review process to correct the alleged errors in the decisions leading to issuance of the challenged leases could substantially delay the activities on API members' leases or to be conducted by API members.  *See* O'Scannlain Decl. ¶ 11.

Although Governmental agencies and officials are named as the defendants, in practice, the exploration and drilling activities of API's members are the "object of" the agency actions that Plaintiffs' lawsuit challenges—Federal Defendants' decisions to conduct the challenged leases, and the issuance of leases, including to API members, during those sales.  This clearly qualifies API for intervention as of right.  *Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) (party has standing when its activities are the ultimate object of the legal challenge); *see also*, *e.g.*, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) ("[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of

its interests as a result of the pending litigation."); *In re City of Fall River, Ma.*, 470 F.3d 30, 31 (1st Cir. 2006) (recognizing that intervenor's application to export natural gas was "Petitioners' ultimate target" in seeking to compel agency to issue regulations); Fed. R. Civ. P. 24 advisory committee's note on the 1966 amendments ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . .").

Ultimately, Plaintiffs ask this Court to end the activities of API members, and eliminate their leases. *See* Amend. Compl., Relief Requested, ¶¶ B–D.  Private parties may intervene in defense of challenged conduct when their interests could thus be directly affected.  *See Fund for Animals*, 322 F.3d at 733 (foreign governmental agency may intervene in defense of legal challenge to federal regulations that would, if successful, limit sport hunting by U.S. citizens in that country; the country's sheep "are the subject of the disputed regulations"); *Ross v. Marshall*, 426 F.3d 745, 757 n.46 (5th Cir. 2005) ("With respect to a potential intervenor seeking to *defend* an interest being attacked by a plaintiff in a lawsuit, we have observed that the intervenor is a real party in interest when the suit was intended to have a 'direct impact' on the intervenor.").

In this regard, API's members are in a similar situation as the members of the association seeking intervention in *Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998).  The plaintiffs there challenged an EPA rule excluding munitions from stringent hazardous waste regulation, and the D.C. Circuit held that the Chemical Manufacturers Association ("CMA") had standing to intervene in defense of the EPA rule:

> CMA has standing because some of its members produce military munitions and operate military firing ranges regulated under the Military Munitions Rule.  These companies are directly subject to the challenged Rule, and they benefit from the EPA's "intended use" interpretation (under which most military munitions at

6

firing ranges are not solid waste) . . . that the [petitioner] is challenging in this appeal. These CMA members would suffer concrete injury if the court grants the relief the petitioners seek; they would therefore have standing to intervene in their own right, and we agree with the litigants that the CMA has standing to intervene on their behalf in support of the EPA.

146 F.3d at 954.

API likewise has Article III standing—and thus a sufficient interest to support intervention—here because its members own leases and conduct, *inter alia*, exploration, development, and drilling operations, and are thus engaged in activities that are "directly subject to the challenged" Government policy, and "would suffer concrete injury if the court grants the relief petitioners seek," *i.e.*, voiding challenged leases, enjoining approval of development operations on the leases, and subjecting the Federal Defendants' reissuance of those leases to new, broad, and uncertain environmental review. *Military Toxics Project*, 146 F.3d at 954. *See also*, *e.g.*, *Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*, 275 F.3d 432, 437 n.14 (5th Cir. 2001) (association had Article III standing and sufficient interest to intervene where lawsuit "deal[t] with the application of a [regulatory] standard that affects [association's] members"); *Fund for Animals*, 322 F.3d at 733–34 (agreeing that Article III standing exists where "injury is fairly traceable to the regulatory action . . . that the [plaintiff] seeks in the underlying lawsuit" and "it is likely that a decision favorable to the [applicant for intervention] would prevent that loss from occurring"); *id*. at 734 (in identifying a qualifying injury under Rule 24(a), "we see no meaningful distinction between a regulation that directly regulates a party and one that directly regulates the disposition of a party's property"); *Atlantic States Legal Found., Inc. v. EPA*, 325 F.3d 281, 282, 285 (D.C. Cir. 2003) (intervention by trade association of utilities regulated by EPA regulation).

Moreover, standing is found and intervention warranted here by an additional consideration. Oil and gas leases constitute both contracts, *see*, *e.g.*, *Mobil Oil Exploration &*

7

*Producing Southeast, Inc. v. United States*, 530 U.S. 604, 607–08 (2000), and property interests, *see*, *e.g.*, *Union Oil Co. v. United States*, 512 F.2d 743, 747 (9th Cir. 1975), and by seeking to void, or forestall exploration or development on, already purchased leases, Plaintiffs would cause an injury to API members by requesting "an agency [action] that replaces a certain [contract] outcome with one that contains uncertainty." *Idaho Power Co. v. FERC*, 312 F.3d 454, 460 (D.C. Cir. 2002).  *See also Fresno Mobile Radio, Inc. v. FCC*, 165 F.3d 965, 967 (D.C. Cir. 1999) (granting intervention by party "which purchased the great majority of the licenses awarded" under the existing rule); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 820 ("Contract rights are traditionally protectable interests.").

In addition, API's members undoubtedly satisfy prudential standing in this litigation because their activities are the "subject of the contested regulatory action," *Amgen, Inc. v. Smith*, 357 F.3d 103, 108 (D.C. Cir. 2004) (quotation omitted)—namely, the Federal Defendants' issuance to them of leases.  Furthermore, the interests of API members correspond with the Mineral Leasing Act's purpose "to provide wise development of [oil and gas] natural resources," *California v. Udall*, 296 F.2d 384, 388 (D.C. Cir. 1961), and NEPA's similar "national policy" to "encourage productive and enjoyable harmony between man and his environment," 42 U.S.C. § 4321; *see* O'Scannlain Decl. ¶ 2.  *See also*, *e.g.*, *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (With respect to prudential standing, a party's interests need only "*arguably* fall within the zone of interests protected *or regulated* by the statutory provision" at issue) (emphasis added); *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399–400 (1987) (holding that trade associations had standing, because even "[i]n cases where the plaintiff is not itself the subject of the contested regulatory action, the [zone of interest] test denies a right of review [only] if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot

8

reasonably be assumed that Congress intended to permit the suit.  The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.").

Finally, the Court's disposition of this action would impair the ability of API (and its members) to protect their interests.  The impairment prong of Rule 24(a) "look[s] to the practical consequences of denying intervention."  *Natural Res. Def. Council v. Costle*, 561 F.3d 904, 909 (D.C. Cir. 1977) (quotation omitted).  It is irrelevant whether the applicant "could reverse an unfavorable ruling" in subsequent proceedings because "there is no question that the task of reestablishing the status quo if the [plaintiff] succeeds . . . will be difficult and burdensome." *Fund for Animals*, 322 F.3d at 735.

Here, API's members *currently* own leases and obtain approval of their development activities through longstanding NEPA policies and procedures of the Federal Defendants, and would face practical difficulty in restoring the status quo following a victory by Plaintiffs voiding the leases, enjoining permit approvals, and requiring Federal Defendants to conduct additional NEPA reviews.  At a minimum, such action would impose a lengthy administrative delay and related costs and uncertainty upon API members.  *See Conservation Law Found. of New England v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992) (fishing group may intervene to defend lawsuit seeking to force government to change regulatory status quo, when "changes in the rules will affect the proposed intervenors' businesses, both immediately and in the future") (citation omitted).  *Cf. Humane Society of the U.S. v. Clark*, 109 F.R.D. 518, 520 (D.D.C. 1985) (sufficient interest of recreational hunting and trapping groups in "present right of their members to hunt and trap on public lands").  At worst, any subsequent lawsuit filed by API to restore the status quo "would be constrained by the *stare decisis* effect of" the present lawsuit, thereby

supporting intervention in this initial lawsuit.  *See Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993), *abrogated on other grounds*, 630 F.3d 1173 (9th Cir. 2011).

For all these reasons, API is entitled to intervene.  Indeed, the D.C. Circuit and federal district courts have routinely and repeatedly permitted oil and natural gas industry trade associations to intervene on behalf of their members' interests in litigation involving oil and gas leasing and operations.  *See supra* pp. 2–3 & n.2; *see also e.g.*, *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466 (D.C. Cir. 2009) (API granted intervention in challenge to Government's five-year offshore leasing program under NEPA and Outer Continental Shelf Lands Act); *Natural Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 293 (D.C. Cir. 1988) (same); *California v. Watt*, 712 F.2d 584 (D.C. Cir. 1983) (same); *California v. Watt*, 668 F.2d 1290, 1294 n.1 (D.C. Cir. 1981) (same); *Alaska v. Andrus*, 580 F.2d 465 (D.C. Cir. 1978) (Western Oil and Gas Association granted intervention in defense of first offshore lease sale offshore Alaska); *Suffolk Cnty. v. Sec'y of the Interior*, 562 F.2d 1368 (2d Cir. 1977) (National Ocean Industries Association granted intervention in defense of first Atlantic offshore lease sale); *Native Vill. of Chickaloon v. Nat'l Marine Fisheries Serv.*, 947 F. Supp. 2d 1031 (D. Ak. 2013) (intervened in challenge to geological and geophysical survey permit).

### C.   API's Interests Will Not Be Adequately Protected By Plaintiffs Or Defendants.

An applicant for intervention need only show that representation of its interest by an existing party "may be" inadequate.  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 & n.10 (1972); *Fund for Animals*, 322 F.3d at 735 (citing *Trbovich*).  The burden of the applicant in meeting that test is "minimal."  *Id.*

In this case, Plaintiffs' position is inimical to that of API, and the Federal Defendants' "obligation is to represent the interests of the American people . . . while [API's] concern is for"

the interests of its members, *see id*. at 736 (granting intervention). As the Supreme Court explained in *Trbovich*, a government agency cannot be characterized as able adequately to represent the interests of an intervenor if the agency has substantially similar interests to a potential intervenor, but has a statutory charge to pursue a different goal as well. *Trbovich*, 404 U.S. at 538–39. Here, while the goals of the Mineral Leasing Act include the interest of API's members in "wise development" of oil and gas resources on public land, *see Udall*, 296 F.2d at 388, the Government's statutory goals—including those imposed by NEPA—are not limited to those interests. *See*, *e.g.*, 42 U.S.C. § 4321.

Although the Federal Defendants' and API's interests could be expected to coincide in defending the claim of violations asserted in this action, these differing goals support API's intervention as of right. As the D.C. Circuit has recognized, the Government "is charged by law with representing the public interest of [all] its citizens" rather than the "narrow and 'parochial' financial interest" of API's members. *Dimond v. District of Columbia*, 792 F.2d 179, 192–93 (D.C. Cir. 1986). Because the interests of API's members "cannot be subsumed within the shared interests of the citizens [at large], no presumption exists that the [Government] will adequately represent [their] interests." *Id*. at 193. *See also Apotex, Inc. v. FDA*, 508 F. Supp. 2d 78, 80 n.2 (D.D.C. 2007) (finding representation inadequate where applicant "has a financial interest . . . that is not an interest shared by the public"); *Fund for Animals*, 322 F.3d at 736–37 (noting that early general agreement and "tactical similarity" with parties "does not assure adequacy of representation") (citation omitted).

Because their interests are not adequately represented by either the Plaintiffs or the Federal Defendants, API should be allowed to intervene in this case as of right.

## II.     IN THE ALTERNATIVE, API QUALIFIES FOR PERMISSIVE INTERVENTION UNDER RULE 24(b).

Fed. R. Civ. P. 24(b)(1) and (3) provide in pertinent part:

> On timely motion, the court may permit anyone to intervene who…has a claim or defense that shares with the main action a common question of law or fact…. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties….

API's and the Federal Defendants' defenses to the Complaint will involve common questions of law—for example, the standards imposed by NEPA and the APA—and fact regarding the Federal Defendants' fulfillment of their obligations under the statutes upon which the Complaint relies.  In addition, as shown above, API has a substantial interest in the outcome of this litigation.  Moreover, this litigation's basic simplicity as a primarily legal dispute belies any concern that API's intervention will result in prejudice to the original parties, and, at any rate, API's intervention vindicates "a major premise of intervention—the protection of third parties affected by pending litigation."  *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 971 (3rd Cir. 1998).  Finally, API applied to intervene in a timely manner, and no delay or prejudice can be shown to the rights of the original parties herein.  Thus, if the Court did not allow API to intervene as of right, it should allow API permissive intervention in the exercise of its sound discretion.

### CONCLUSION

For the foregoing reasons, API meets the requirements for intervention pursuant to both Fed. R. Civ. P. 24(a) and 24(b).  API respectfully requests that this Court grant this motion for leave to intervene in this proceeding without limitation.[4]

---

[4] *See The Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) (finding "the purposes of Rule 24 are best served by permitting the prospective intervenors to engage in all (continued…)

12

A proposed Order is submitted herewith.  As required by Fed. R. Civ. P. 24(c), API has

included with this motion, as Exhibit 1 hereto, its proposed Answer to the Amended Complaint.

Respectfully submitted,

*/s/  Steven J. Rosenbaum*
Steven J. Rosenbaum
  D.C. Bar No. 331728
Bradley K. Ervin
  D.C. Bar No. 982559
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone:  (202) 662-6000
Fax:  (202) 662-6291
srosenbaum@cov.com

March 26, 2021

*Attorneys for Applicants for Intervention*

---

aspects of this litigation…without limitation"); 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1922 (3d ed. 2010) (questioning authority of courts to impose conditions on intervenor-of-right beyond those of a housekeeping nature).

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2021, I caused a true and correct copy of the foregoing Motion for Leave to Intervene and all accompanying attachments, to be filed with the Court electronically and served by the Court's CM/ECF System upon the listed counsel:

Samantha Ruscavage-Barz
Daniel L. Timmons
WildEarth Guardians
301 N. Guadeloupe Street, Suite 201
Santa Fe, NM 87501
Tel: (505) 410-4180
sruscavagebarz@wildearthguardians.org
dtimmons@wildearthguardians.org

Shiloh S. Hernandez
Western Environmental Law Center
103 Reeder's Alley
Helena, MT 59601
Tel: (406) 204-4861
hernandez@westernlaw.org

Kyle Tisdel
Western Environmental Law Center
208 Paseo del Pueblo Sur, Suite 602
Taos, NM 87571
Tel: (575) 613-8050
tisdel@westernlaw.org

*Counsel for Plaintiffs*

Michael Sawyer
Michelle-Ann Williams
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 514-5273
michael.sawyer@usdoj.gov
michelle-ann.williams@usdoj.goc

*Counsel for Federal Defendants*

Matt VanWormer
Kelly Shaw
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-7895
matt.vanwormer@wyo.gov
kelly.shaw@wyo.gov

*Counsel for Movant-Intervenor State of Wyoming*

/s/ *Steven J. Rosenbaum*
Steven J. Rosenbaum