Andrew C. Lillie
Jessica Black Livingston
Hogan Lovells US LLP
*Attorneys for Proposed Defendant-Intervenor*
*Anschutz Exploration Corp.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILDEARTH GUARDIANS et al.,

     Plaintiffs,

     vs.

DEB HAALAND, Secretary, U.S.
Department of the Interior et al.,

     Defendants.

Case No. 21-cv-00175-RC

**ANSCHUTZ EXPLORATION
CORPORATION'S MOTION TO
INTERVENE**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

CONFERRAL WITH PARTIES ......................................................................................... 4

ARGUMENT ....................................................................................................................... 4

I.      AEC has a right to intervene under Rule 24(a)........................................................ 4

        A.      AEC has standing......................................................................................... 4

        B.      AEC has a right to intervene. ...................................................................... 6

                1.      The first element is fulfilled because this motion is timely. ....................... 6

                2.      The second element is met because AEC has a significantly
                        protected interest in the leases at the heart of this lawsuit. ........................ 9

                3.      The third element is satisfied because disposition of this
                        case may impair AEC's ability to protect its interests in the
                        leases. ...................................................................................................... 11

                4.      The fourth factor is met because the current parties do not
                        adequately represent AEC's interests. ..................................................... 12

II.     In the alternative, the Court should permit AEC to intervene under Rule
        24(b)(1)(B). ................................................................................................................ 16

III.    In the alternative, at a minimum, the Court should consider AEC a necessary
        party under Rule 19........................................................................................................ 18

CONCLUSION................................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. Blackburne & Sons Realty Cap. Corp.*,
   No. 2:19-CV-06947-CAS (AS), 2020 WL 1445712 (C.D. Cal. Mar. 25, 2020)....................15

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
   584 F. Supp. 2d 1 (D.D.C. 2008) ........................................................................6, 10

*Am. Horse Protection Ass'n, Inc. v. Veneman*,
   200 F.R.D. 153 (D.D.C. 2001).............................................................................5

*Aristotle Int'l, Inc. v. NGP Software, Inc.*,
   714 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................16

*Building & Const. Trades Dep't., AFL–CIO v. Reich*,
   40 F.3d 1275 (D.C. Cir. 1994) ............................................................................4

*Castro County v. Crespin*,
   101 F.3d 121 (D.C. Cir. 1996) ............................................................................5

*City of Williams v. Dombeck*,
   No. 00CV66, 2000 WL 33675559 (D.D.C. Aug. 17, 2000)........................................7

*Cole v. Cont'l Oil Co.*,
   240 F. Supp. 642 (W.D. Okla. 1965) ...................................................................20

*Conner v. Burford*,
   848 F.2d 1441 (9th Cir. 1988) ............................................................................8

*In re Consol. Salmon Cases*,
   688 F. Supp. 2d 1001 (E.D. Cal. 2010)................................................................15

*Cook v. FDA*,
   733 F.3d 1 (D.C. Cir. 2013) ...............................................................................19

*\*Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*,
   788 F.3d 312 (D.C. Cir. 2015) ...............................................................5, 14, 15

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
   276 F.3d 1150 (9th Cir. 2002) ...........................................................................20

*Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*,
   No. 10-0254-WS-C, 2010 WL 5139101 (S.D. Ala. Dec. 9, 2010)...........................15

*Dimond v. District of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986) ........................................................................................13

*Eco Tour Adventures, Inc. v. Zinke*,
   249 F. Supp. 3d 360 (D.D.C. 2017) ...............................................................................20

*EEOC v. Nat'l Children's Ctr.*,
   146 F.3d 1042 (D.C. Cir. 1998) ......................................................................................16

*Env'l Def. v. Leavitt*,
   329 F. Supp. 2d 55 (D.D.C. 2004) ...................................................................................9

*Env't Def. Ctr. v. Bureau of Safety and Env't Enforcement*,
   No. CV 14-9281, 2015 WL 12734012 (C.D. Cal. Apr. 2, 2015) ...........................................14

*Foster v. Gueory*,
   655 F.2d 1319 (D.C. Cir. 1981) ..................................................................................9, 13

*Freedom from Religion Found., Inc v. Geithner*,
   644 F.3d 836 (9th Cir. 2011) ........................................................................................17

*\*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) ............................................................................ *passim*

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ......................................................................................................19

*Hardin v. Jackson*,
   600 F. Supp. 2d 13 (D.D.C. 2009) .................................................................................13

*Hodgson v. United Mine Workers of Am.*,
   473 F.2d 118 (D.C. Cir. 1972) .........................................................................................6

*Karsner v. Lothian*,
   532 F.3d 876 (D.C. Cir. 2008) .........................................................................................6

*Kettle Range Conservation Group v. BLM*,
   150 F.3d 1083 (9th Cir. 1998) .......................................................................................20

*Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*,
   43 F.3d 1491 (D.C. Cir. 1995) .......................................................................................19

*Levin v. Ruby Trading Corp.*,
   333 F.2d 592 (2d Cir. 1964) ..........................................................................................10

*Lomayaktewa v. Hathaway*,
   520 F.2d 1324 (9th Cir. 1975) .......................................................................................20

*Mont. Wildlife Fed'n v. Bernhardt*,
No. 4:18-cv-69 (D. Mont. June 28, 2018)..............................................................1

*Mova Pharm. Corp. v. Shalala*,
140 F.3d 1060 (D.C. Cir. 1998) .............................................................................9

*N. Cheyenne Tribe v. Hodel*,
851 F.2d 1152 (9th Cir. 1988) ...............................................................................8

*Naartex Consulting Corp. v. Watt*,
722 F.2d 779 (D.C. Cir. 1983) ...............................................................................20

*Nanko Shipping, USA. v. Alcoa, Inc.*,
850 F.3d 461 (D.C. Cir. 2017)................................................................................19

*Nat. Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) ..........................................................................12, 13

*Nat'l Wildlife Fed'n v. Burford*,
878 F.2d 422 (D.C. Cir. 1989) ...............................................................................7

*Ramah Navajo Sch. Bd. v. Babbitt*,
87 F.3d 1338 (D.C. Cir. 1996) ..........................................................................18, 19

*Roane v. Gonzales*,
269 F.R.D. 1 (D.D.C. 2010)....................................................................................17

*Robbins v. BLM*,
438 F.3d 1074 (10th Cir. 2006) .............................................................................21

*S. Utah Wilderness v. Norton*,
No. CIV.A. 01-2518 (CKK), 2002 WL 32617198 (D.D.C. June 28, 2002)............6

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*,
331 F.R.D. 5 (D.D.C. 2019)...............................................................................5, 7

*SEC v. Prudential Sec. Inc.*,
136 F.3d 153 (D.C. Cir. 1998) ...............................................................................9

*Sierra Club v. Hathaway*,
579 F.2d 1162 (9th Cir. 1978) ...............................................................................20

*Theodore Roosevelt Conserv. P'ship v. Salazar*,
605 F. Supp. 2d 263 (D.D.C. 2009) .......................................................................10

*Three Affiliated Tribes of Fort Berthold Indian Reservation v. United States*,
637 F. Supp. 2d 25 (D.D.C. 2009) .........................................................................19

*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972)............................................................................................12

*Union Oil Co. of Cal. v. Morton*,
   512 F.2d 743 (9th Cir. 1975) ............................................................................10

*\*United States v. AT&T*,
   642 F.2d 1285 (D.C. Cir. 1980) ...............................................................6, 7, 13

*United States v. Colo. Organic Chem. Co.*,
   No. 98-CV-1600-WYD, 2015 WL 6590783 (D. Colo. Oct. 30, 2015) ...................15

*W. Coast Expl. Co. v. McKay*,
   213 F.2d 582 (D.C. Cir. 1954).........................................................................19

*W. Org. of Res. Councils v. Jewell*,
   Civ. Action No. 14-1993 (RBW), 2015 WL 13711094 (D.D.C. July 15, 2015).....................11

*W. Watersheds Project v. Zinke*,
   No. 1:18-cv-00187-REB (D. Idaho 2018) .......................................................1, 14

*Ward v. Deavers*,
   203 F.2d 72 (D.C. Cir. 1953)...........................................................................20

*Waterkeeper All., Inc. v. Wheeler*,
   330 F.R.D. 1 (D.D.C. 2018)..............................................................................11

*WildEarth Guardians v. Bernhardt*,
   No. 16-1724, __ F. Supp. 3d. __, 2020 WL 6701317 (D.D.C. 2020) ......................8

*\*WildEarth Guardians v. Salazar*,
   272 F.R.D. 4 (D.D.C. 2010)........................................................................6, 9, 11

*WildEarth Guardians v. Zinke*,
   368 F. Supp. 3d 41 (D.D.C. 2019) .......................................................................8

**Statutes**

Federal Land Policy and Management Act......................................................................2

NEPA ...........................................................................................................2, 8, 10, 12

**Other Authorities**

7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1917 (3d ed.
   2007) ...........................................................................................................16

*\*Fed. R. Civ. P. 19 ............................................................................................. passim*

Fed. R. Civ. P. 19(a) ...................................................................................................4, 19, 20

Fed. R. Civ. P. 19(a)(1) ..................................................................................................18, 21

Fed. R. Civ. P. 19(a)(1)(A) ...............................................................................................4, 19

Fed. R. Civ. P. 19(a)(1)(B)(i).............................................................................................4, 20

Fed. R. Civ. P. 19(a)(1)(B)(ii)............................................................................................4, 21

Fed. R. Civ. P. 19(a)(2) ........................................................................................................18

Fed. R. Civ. P. 19(b) ............................................................................................................19

Fed. R. Civ. P. 24 ........................................................................................................4, 6, 21

Fed. R. Civ. P. 24(a) ..................................................................................................... *passim*

*Fed. R. Civ. P. 24(a)(2) ............................................................................................... *passim*

Fed. R. Civ. P. 24(b) ......................................................................................................16, 17

Fed. R. Civ. P. 24(b)(1) ..........................................................................................................3

Fed. R. Civ. P. 24(b)(1)(B) ...........................................................................................4, 16, 18

Fed. R. Civ. P. 24(b)(3)..........................................................................................................16

## INTRODUCTION

The Anschutz Exploration Corporation ("AEC") requests that the Court allow it to intervene as a defendant. Plaintiffs WildEarth Guardians and the Physicians for Social Responsibility ("Plaintiffs") ask the Court to destroy AEC's property and contractual interests in federal leases for which AEC paid millions of dollars, and in which AEC has invested millions more. But, like other plaintiffs who have attempted the same in recent federal cases,[1] Plaintiffs did not name AEC as a defendant, or any of the many other leaseholders whose property is at risk if Plaintiffs get their way. This is not a trivial matter. It's a matter of constitutional due process. This case cannot proceed without allowing AEC to intervene to defend its property rights.

AEC is an independent oil-and-gas exploration and development company with operations in Colorado, Utah, and Wyoming. Ex. 1 ¶ 2 (Declaration of J. DeDominic, "Declaration"). Since its founding, AEC has focused on responsible development of oil-and-gas resources in the Rocky Mountains, and it is actively involved in a drilling and development program that includes federal leases in the Powder River Basin of Wyoming and the Unita Basin of Utah, in addition to leasehold positions in the Big Horn and Green River Basins of Wyoming and the Piceance Basin of Colorado. *Id.* ¶ 3.

Between September 2019 and March 2020, the Bureau of Land Management ("BLM") conducted three oil-and-gas lease sales in Wyoming, resulting in 475 leases subject to Plaintiffs' claims. Am. Compl. ¶ 135. BLM also conducted numerous lease sales in Utah from 2016 to

---

[1] *See, e.g.*, *W. Watersheds Project v. Zinke*, No. 01:18-cv-187, Doc. No. 165 (D. Idaho 2018) (Second Amended Complaint, which does not name AEC as a defendant); *Mont. Wildlife Fed'n v. Bernhardt*, No. 4:18-cv-69, Doc. No. 19 (D. Mont. June 28, 2018) (Amended Complaint, which does not name AEC as a defendant).

2019, including one lease sale in March 2019 involving 90 parcels subject to Plaintiffs' claims. Am. Compl. ¶ 132, Table A. BLM completed Environmental Assessments ("EAs") and issued Findings of No Significant Impact ("FONSI") before each sale. *Id.* ¶ 137. Those EAs analyze impacts across Wyoming and Utah. In the EAs, BLM assessed numerous potential environmental impacts associated with leasing, including those related to climate. Before including individual parcels in a lease sale, BLM verified that the applicable Resource Management Plan, implemented under the Federal Land Policy and Management Act, allowed it to lease those parcels. The agency added stipulations to some of the leases to mitigate potential effects of development on land and species.

During the lease sales, AEC paid approximately $5,071,544 for 51 leases on about 74,246 acres. Ex. 1 ¶¶ 4–7 (listing lease serial numbers). AEC has been conducting technical and scientific operational work related to these leases, and has invested $4.5 million in preparing to acquire, acquiring, and analyzing development of these leaseholds. *Id.* ¶ 8. Those leases, among the total of 1,153 federal leases purchased at these lease auctions by private entities that have not been named as defendants, are on the chopping block because Plaintiffs ask this Court to deem them a legal nullity. *See* Am. Compl., Relief Request ¶ C.

Plaintiffs allege that BLM's analysis of climate impacts, especially cumulative impacts of greenhouse-gas emissions, was deficient. *See* Am. Compl. ¶¶ 101–25, 135–37. Plaintiffs ask Secretary Haaland and the BLM ( "Federal Defendants") not only to redo the NEPA analysis but also to unwind and to extinguish leases already sold and, in some cases, already developed. *See* Am. Compl., Relief Request ¶¶ A–E.

Despite asking the Court to cancel federal leases worth hundreds of millions of dollars of past investment and potential future mineral recovery, and notwithstanding that the leases are

real property owned by private entities including AEC, no oil-and-gas company has been named as a defendant and allowed to defend its property rights. Although the American Petroleum Institute ("API"), a national oil-and-gas trade group, has intervened, AEC is not an API member. And API could not represent AEC's unique positions in any event. Thus, not only do Plaintiffs' allegations and requested relief threaten AEC's real-property and contractual interests, but the lawsuit also gives rise to concerns about AEC's and other companies' due-process rights—to be made aware of and involved in the lawsuit, and to be allowed to adequately defend their property interests against Plaintiffs' attempts to destroy them.

AEC should be allowed to intervene as a matter of right in this lawsuit under Federal Rule of Civil Procedure 24(a)(2). AEC's motion is timely. It comes before the Federal Defendants have answered and before the Court has entered a scheduling order. *See* Order Granting Mot. to Intervene by API ("Order"), ECF No. 22, at 3. AEC "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). There is no question that AEC validly secured its leases through established BLM lease-sale protocols. Ex. 1 ¶ 9. And it is plain that Plaintiffs' action threatens to impair AEC's unique interests. AEC's leases are directly affected by (a) the Federal Defendants' actions related to the oil-and-gas leasing and development at issue in this lawsuit, (b) Plaintiffs' claims that BLM violated the law, and (c) the Court's adjudication of this case. AEC moves to intervene as the only party that can adequately protect its interests.

Alternatively, AEC should be allowed to permissibly intervene under Rule 24(b)(1) because AEC's defenses of its leases share common questions of law and fact with other parties

to the lawsuit. At the very least, the Court should join AEC as a required party under Rule 19 because (a) the Court cannot award the relief requested without AEC having party status under Rule 19(a)(1)(A); (b) awarding such relief without AEC's presence would impede AEC's ability to protect its interests under Rule 19(a)(1)(B)(i); and (c) that approach would leave the government subject to a substantial risk of facing inconsistent obligations, *see* Rule 19(a)(1)(B)(ii).

Whether under Rule 24 or Rule 19, the Court should recognize that AEC—as the owner of federal leases that Plaintiffs hope to cancel—must be a party to this case.

For all these reasons, the Court should grant this motion.

## CONFERRAL WITH PARTIES

Under D.C. LCvR7(m), AEC conferred with counsel for the parties about this motion. Plaintiffs take no position and reserve the right to file a response. The Federal Defendants take no position. API consents, and Wyoming does not oppose.

## ARGUMENT

The Court should allow AEC to intervene for four reasons. First, AEC has standing to participate as a defendant. Second, AEC has a right to intervene under Rule 24(a)(2). Third, AEC should be permitted to intervene under Rule 24(b)(1)(B). Finally, AEC is a required party that should be joined under Rule 19(a).

## I.      AEC has a right to intervene under Rule 24(a).

### A.      AEC has standing.

In the D.C. Circuit, a party seeking to intervene must establish the same constitutional standing it would have to establish had it commenced the lawsuit in the first place. *Building & Const. Trades Dep't., AFL–CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994). A potential intervenor's Article III standing "presents a question going to this [C]ourt's jurisdiction" and is

thus addressed first. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003);

*see also Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 9 (D.D.C.

2019). A defendant-intervenor is no different than a plaintiff-intervenor: it must also demonstrate

standing. *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 318

(D.C. Cir. 2015). The burden is not heavy: "[f]or standing purposes, it is enough that a plaintiff

seeks relief, which, if granted, would injure the prospective intervenor." *See id.*

 An entity seeking to intervene as a party in a case challenging agency action must

establish injury in fact from the agency's action, that the injury was caused by the agency's

action, and that the injury will be redressed by the court setting aside the agency's action. *Castro

County v. Crespin*, 101 F.3d 121, 126 (D.C. Cir. 1996). "It would follow that, when a party seeks

to intervene as a defendant to uphold what the government has done, it would have to establish

that it will be injured in fact by the setting aside of the government's action it seeks to defend,

that this injury will have been caused by that invalidation, and the injury would be prevented if

the government action is upheld." *Am. Horse Protection Ass'n, Inc. v. Veneman*, 200 F.R.D. 153,

156 (D.D.C. 2001) (citing *Crespin*, 101 F.3d at 126).

 Here, the analysis is straightforward. The injury that AEC would suffer if Plaintiffs were

to prevail and the Court were to order BLM to cancel AEC's leases would be the loss of AEC's

property interests and financial investments in those leases. If the Federal Defendants prevail

instead, and BLM's leasing decisions are upheld, AEC will not lose its leases. In sum, Plaintiffs

seek relief, which, if granted, will injure AEC. That is enough to establish AEC's standing to

intervene. *See Crossroads*, 788 F.3d at 318.

 Finally, as this Court has recognized, "a putative 'intervenor who satisfies Rule 24(a) will

also have Article III standing.'" Order at 2 (ECF No. 22); *see also* ECF No. 21 (quoting

*Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008)). Because AEC satisfies Rule 24(a) as demonstrated below, AEC meets this Court's Article III standing requirement.

>    **B.      AEC has a right to intervene.**

The Court should allow AEC to intervene by right under Rule 24(a). "The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). Under Rule 24(a), the movant must satisfy four elements: (1) the motion to intervene is timely; (2) the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by existing parties. *Fund for Animals*, 322 F.3d at 731 (citations omitted); *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008); Fed. R. Civ. P. 24(a)(2). In general, courts construe Rule 24(a) liberally in favor of intervention. *See, e.g.*, *S. Utah Wilderness v. Norton*, No. CIV.A. 01-2518 (CKK), 2002 WL 32617198, at *5 (D.D.C. June 28, 2002) (describing the D.C. Circuit's position on Rule 24(a)(2) as a "liberal approach").

>          **1.      The first element is fulfilled because this motion is timely.**

A district court has discretion when considering the timeliness element. *See Fund for Animals*, 322 F.3d at 732. Courts evaluate timeliness based on "(a) the time elapsed since the inception of the action, (b) the probability of prejudice to those already party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights." Order at 3 (ECF No. 22) (citing *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 12 (D.D.C. 2010)); *see also United States v. AT&T*, 642

F.2d 1285, 1295 (D.C. Cir. 1980). Timeliness is "judged in consideration of all the circumstances," including "the need for intervention as a means of preserving the applicant's rights." *AT&T*, 642 F.2d at 1295. In particular, the Court should look to the date that the party seeking to intervene "knew or should have known that any of [his] rights would be directly affected" by the litigation. *Nat'l Wildlife Fed'n v. Burford*, 878 F.2d 422, 434 (D.C. Cir. 1989), *rev'd on other grounds sub nom. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990).

All of the timeliness factors favor AEC.

First, no significant time has elapsed between when Plaintiffs filed this lawsuit and when AEC filed this motion. Plaintiffs filed the lawsuit on January 19, 2021. AEC seeks to intervene 16 weeks later, after carefully analyzing Plaintiffs' allegations in both the Complaint and the Amended Complaint and concluding that this case may affect its unique property, contractual rights, and investments in its leases—and possibly eviscerate them. *Cf.* Order at 3 (recognizing API's motion to intervene "less than ten weeks after the initial complaint was filed" was timely); *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 12 (D.D.C. 2019) (motion to intervene timely when tribe filed intervention motion 16 days after government filed answer); *City of Williams v. Dombeck*, 2000 WL 33675559, at *2 (D.D.C. Aug. 17, 2000) (intervenor filed motion three months after Plaintiffs initiated case, and before defendants filed answer; because intervention would occur "at the earliest stage of the litigation, it meets the timeliness requirement"). Moreover, AEC filed its motion to intervene before the Federal Defendants have answered, and the Court has not yet entered a scheduling order. *See* Order at 3 (ECF No. 22).

Second, AEC's purpose in intervening cannot be overstated: it is to protect its leases from destruction. AEC is the only entity that can do so, because it is intimately familiar with its own

property, its own investments, and its own operations. It is one thing for Plaintiffs to request that BLM revisit the NEPA assessments underlying the agency's leasing decisions. That is the stuff of rudimentary challenges to agency action. But it is another thing altogether for Plaintiffs also to ask the federal government to wipe out leases that are already in existence—that were bid for, purchased, and are now owned by private entities.

Critically, remedies in cases like this traditionally stop well short of lease cancellation, as this Court previously recognized. *See, e.g.*, *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 83–85 (D.D.C. 2019) (Contreras, J.) (finding BLM's EAs and FONSIs did not comply with NEPA but remanding without vacating leases); *WildEarth Guardians v. Bernhardt*, No. 16-1724, __ F. Supp. 3d. __, 2020 WL 6701317, at *14–15 (D.D.C. 2020) (same); *see also N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1157–58 (9th Cir. 1988) (upholding order suspending coal-mining operations rather than voiding the leases); *Conner v. Burford*, 848 F.2d 1441, 1460–61 & n.50 (9th Cir. 1988) (clarifying that the district court's order merely suspended activity on the leases, thus avoiding "the unnecessarily harsh result of completely divesting the lessees of their property rights"). But here, Plaintiffs ask the Court to completely divest AEC of its property and contract rights. That is a bridge too far.

Finally, as to the prejudice factor, AEC's intervention would not cause prejudice to any party or defendant-intervenor. Each party will have the full opportunity to make every possible argument moving forward and to protect its own interests. Because AEC's intervention occurs before the federal government has responded to the Amended Complaint, before any scheduling order has been entered, and before any substantive activity or discovery has occurred, no party will be required to relitigate issues, duplicate its efforts, or suffer any other prejudice.

For those reasons, AEC's motion is timely.

### 2.    The second element is met because AEC has a significantly protected interest in the leases at the heart of this lawsuit.

The second Rule 24(a)(2) element also is readily met. The D.C. Circuit has held that

constitutional standing alone is sufficient to establish that a proposed intervenor has "an interest

relating to the property or transaction which is the subject of the action." *Fund For Animals*, 322

F.3d at 735 (citing Fed. R. Civ. P. 24(a)(2)); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060,

1076 (D.C. Cir. 1998) ("[A proposed intervenor] need not show anything more than that it has

standing to sue in order to demonstrate the existence of a legally protected interest for purposes

of Rule 24(a)."); *Env'l Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 n.7 (D.D.C. 2004) (noting that "a

person who satisfies constitutional standing requirements fulfills [] the second of the four Rule

24(a) requirements"). AEC has standing to participate, so it satisfies the second Rule 24(a)

element. *See supra* pp. 4–6.

AEC satisfies the Rule 24(a) test in its own right too. Rule 24(a) requires that a

prospective intervenor "demonstrate a legally protected interest in the action." *SEC v. Prudential

Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). This "test operates in large part as a practical

guide, with the aim of disposing of disputes with as many concerned parties as may be

compatible with efficiency and due process." *WildEarth Guardians v. Salazar*, 272 F.R.D. at 12–

13.

AEC's leases—and the property and contractual rights they embody—are at the center of

this lawsuit and subject to cancellation if Plaintiffs succeed. AEC's leases are not merely

"relat[ed] to … the property or transaction that is the subject of the action"—*they are the

property at issue here*. *See* Fed. R. Civ. P. 24(a)(2); *Fund For Animals*, 322 F.3d at 735 (citing

*Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious

when he asserts a claim to property that is the subject matter of the suit.…")). Federal oil-and-gas

leases constitute binding, enforceable, contractual arrangements that govern the rights and obligations of BLM and lessees like AEC. *Union Oil Co. of Cal. v. Morton*, 512 F.2d 743, 747 (9th Cir. 1975) (a mineral lease conveys an enforceable property interest). This contractual arrangement creates a significant, legally protectable property interest in the leases.

The mere threat of economic injury—like the impending economic injury that would flow from an order directing BLM to cancel AEC's leases—is a legally protected interest that warrants intervention as a matter of right. *See Fund for Animals*, 322 F.3d at 733 (D.C. Cir. 2003) (threatened loss of revenue sufficient interest to support intervention); *Akiachak Native Cmty.*, 584 F. Supp. 2d at 6 (potential loss of right to tax constitutes sufficient interest); *see also* ECF No. 21 at 3–4 (recognizing that potential financial and economic impacts to Wyoming constitute sufficient interests to warrant intervention).

Plaintiffs want the Court to tell BLM to erase AEC's leases. That poses a direct and substantial threat to AEC's legally protectable interests in defending its property rights and avoiding economic injury. *See Theodore Roosevelt Conserv. P'ship v. Salazar*, 605 F. Supp. 2d 263, 269 (D.D.C. 2009) (allowing oil-and-gas operators with federal drilling permits to intervene in suit challenging BLM's NEPA compliance after issuing those permits). At bottom, the Court has been asked to wipe out AEC's multimillion-dollar real-property interests in its oil-and-gas leases in Wyoming and Utah, and AEC should be allowed to defend itself. *See Levin v. Ruby Trading Corp.*, 333 F.2d 592, 595–96 (2d Cir. 1964) (lessee who asserted invalidity of lease cancellation by receiver entitled to intervene as of right). AEC has a vital, significantly protectable interest in the property at the center of this dispute. That satisfies the second element of the test.

**3.    The third element is satisfied because disposition of this case may impair AEC's ability to protect its interests in the leases.**

AEC is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2). This Court recently recognized that "[w]here an agency's 'decision below was favorable to [the proposed-intervenor], and the present action is a direct attack' on that decision, … the present action threatens to impair the intervenor's protected interests." Order at 3 (ECF No. 22) (quoting *WildEarth Guardians v. Salazar*, 272 F.R.D. at 12). BLM's decision to lease the parcels at issue was favorable to AEC—AEC successfully acquired 51 leases during the Utah lease sale in March 2019 and the Wyoming lease sales in September 2019, December 2019, and March 2020—and Plaintiffs' claims are a direct attack on those lease sales and AEC's leases. Ex. 1 ¶¶ 4–7. AEC paid over $5 million dollars to acquire the leases, and invested $4.5 million in preparing to acquire, acquiring, and analyzing development of these leaseholds. *Id.* ¶¶ 4–8. If Plaintiffs succeed in vacating these leases, AEC's interests unquestionably would be impaired.

What's more, the "practical consequences" of denying AEC intervention are significant. *See Fund for Animals*, 322 F.3d at 735; *W. Org. of Res. Councils v. Jewell*, Civ. Action No. 14-1993 (RBW), 2015 WL 13711094, at *5 (D.D.C. July 15, 2015) ("The inquiry into whether a legally[ ] cognizable interest will be impaired is not a rigid one ... courts look to the practical consequences of denying intervention[.]") (internal quotation marks omitted). Here, the "unsuccessful 'disposition of the action would result in a substantial change in the status quo with respect to [AEC's] interests,' such that 'the task of reestablishing the status quo if [plaintiffs] succeed[ ] ... will be difficult and burdensome.'" *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 7 (D.D.C. 2018) (first alteration added) (quoting *District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011)). If Plaintiffs were to succeed on the

11

merits, and the Court were to order BLM to cancel AEC's leases, AEC's leaseholds would become non-existent, irreparably impairing AEC's interest.

The "practical consequences" of not allowing AEC to intervene to protect its leases are straightforward and are summed up simply. First, denying intervention would leave AEC's leases exposed to this litigation, undefended by the one party that can most powerfully defend them. Second, if AEC is not allowed to intervene and the leases are destroyed, AEC would lose the leases, along with their present and future value. Third, once extinguished, the leases AEC owns may never be offered for sale again. Even if the leases are offered for sale in the future, after, say, BLM tries to improve its NEPA analysis, there is no guarantee that the available leases would be identical to what AEC owns now: of the same location, size, character, or mineral quality. Or that AEC would be able to bid for them. Or that it would be the successful bidder. Finally, if not allowed to intervene, AEC will continue to oppose the evisceration of its leases in one fashion or another, so its "involvement [here] may lessen the need for future litigation to protect [its] interests." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977) (acknowledging industry-intervenors' unique interests). In short, keeping AEC out could create more litigation, parallel cases in different jurisdictions, and the possibility of conflicting opinions and directives by federal courts.

### 4.     The fourth factor is met because the current parties do not adequately represent AEC's interests.

The final factor is whether AEC's interests are "adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). They are not. The Supreme Court has held that this "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The D.C. Circuit

has described this requirement as "not onerous." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *see also Foster*, 655 F.2d at 1325; *AT&T Co.*, 642 F.2d at 1293 (stating that a petitioner "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee").

 No party or intervenor adequately represents AEC's interests.

 First, as the D.C. Circuit held in *Fund for Animals*, AEC's interests are "plainly are not adequately represented by the federal defendants." 322 F.3d at 735–37; *see also* Order at 4 ("Because the government has an obligation to represent the interests of all citizens, the government generally does not adequately represent the more specific interests of an intervenor."). "It is well-established that governmental entities generally cannot represent the 'more narrow and parochial financial interest' of a private party." *Fund for Animals*, 322 F.3d at 737. The D.C. Circuit has consistently taken this position. *See, e.g.*, *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) ("The [D.C.] Circuit has repeatedly held that private companies can intervene on the side of the government, even if some of their interests converge.") (citing *Fund for Animals*, 322 F.3d at 736); *Costle*, 561 F.2d at 912–13. Here, BLM is charged with representing the interests of the American people. *See* Order at 4 ("[T]he Federal Defendants must consider the interests of the American people."). AEC's interests are far more narrow, because they are tied to its particular leaseholds. Just as this Court concluded that the federal government does not adequately represent API's interests, it likewise does not adequately represent AEC's interests. *See* Order at 4.

 Second, in the same way that the Federal Defendants have a duty to represent the interests of the public but not the personal or economic interests of private entities such as AEC, defendant-intervenor State of Wyoming also does not represent the interests of AEC. *See, e.g.*,

*Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 321 ("[W]e look skeptically on government entities serving as adequate advocates for private parties."). Nor did it purport to when it sought to intervene. *See generally* Wyoming Mem. in Support of Mot. to Intervene, ECF No. 15 (discussing Wyoming's economic interests in revenues and regulatory interest in oil-and-gas development, but nowhere discussing specific interests of or purporting to represent leaseholders).

Finally, API does not adequately represent AEC's interests either. API has intervened to protect "its specific members" interests, *see* Order at 3–4, but AEC is not a member of API. Ex. 1 ¶ 10; *see also* API's Members List, *https://www.api.org/membership/members* (last visited May 10, 2021). API was clear that it sought to intervene "to protect [its members'] interests." API Mot. to Intervene, ECF No. 20, at 2. It never purported to (nor could it) represent *all* of the oil-and-gas industry's interests. Even though an oil-and-gas trade association has intervened, companies that are not members of that association should be allowed to intervene to protect their specific, unrepresented interests. *See, e.g.*, *W. Watersheds Project v. Zinke*, No. 1:18-cv-00187-REB (D. Idaho 2018), Doc. 111, at 3–6 (allowing oil-and-gas companies to intervene for purposes of raising non-duplicative arguments because they were not members of trade association Western Energy Alliance, which purported to represent its members' interests).

Moreover, trade associations like API represent the collective interests of their members on a broad, aggregated scale. *See, e.g.*, *Env't Def. Ctr. v. Bureau of Safety and Env't Enforcement*, No. CV 14-9281, 2015 WL 12734012, at *4 (C.D. Cal. Apr. 2, 2015) ("Whereas Exxon seeks to protect its financial investment, API seeks to address 'industry-wide concerns and to protect the collective interests of its 600-plus members.'"). AEC has "specific knowledge regarding the permitted activities at issue" on its leases, *id.*, and has "much more narrowly

focused, direct and specific … financial interests" than API's more general, membership-wide interests, *see Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*, No. 10-0254-WS-C, 2010 WL 5139101, at *3 (S.D. Ala. Dec. 9, 2010); *see also In re Consol. Salmon Cases*, 688 F. Supp. 2d 1001, 1010 (E.D. Cal. 2010) (members' unique interests not adequately represented by trade organization representing "only the common interests of its diverse membership").[2] Moreover, AEC seeks to protect its individual property interests. API has no property at issue, so it cannot adequately represent property owners like AEC. *See United States v. Colo. Organic Chem. Co.*, No. 98-CV-1600-WYD, 2015 WL 6590783, at *2 (D. Colo. Oct. 30, 2015). Even if API's and AEC's interests may sometimes "coincide," AEC cannot be required to "rely on a doubtful friend to represent its interests, when it can represent itself." *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 321.

In sum, neither BLM nor Wyoming nor API can adequately protect AEC's constitutionally protected property interests or its contractual interests in its leases. Nor would any of them be certain to do so even if they could, especially with the same level of urgency and priority that AEC now possesses. AEC is best able to explain how it will be injured, the disruptions to its business, and its economic harm. AEC is best able to explain how it will suffer from the destruction of its leases if BLM's leasing decisions are reversed. AEC has a narrow yet tremendously significant interest that is distinct from the other parties' interests. As a result, AEC has met the requisite "minimal" showing under this factor.

*       *       *

---

[2] Similarly, if AEC's leases are cancelled, BLM would refund lease payments to AEC, not API. API thus cannot represent AEC's interests, because "[a] proposed intervenor's interest is not represented … if the intervenor is entitled to damages that the existing parties cannot recover." *Abrams v. Blackburne & Sons Realty Cap. Corp.*, No. 2:19-CV-06947-CAS (AS), 2020 WL 1445712, at *5 (C.D. Cal. Mar. 25, 2020).

Because AEC meets the rule's four requirements, the Court should allow it to intervene by right under Rule 24(a)(2).

## II.    In the alternative, the Court should permit AEC to intervene under Rule 24(b)(1)(B).

Alternatively, the Court should allow AEC to intervene permissibly under Rule 24(b). Under Rule 24(b), "the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Rule also requires courts to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Permissive intervention "is an inherently discretionary enterprise" that affords the Court "wide latitude." *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Federal Rule of Civil Procedure 24(b) provides, in pertinent part, that "'the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact.'" *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010). "In order to litigate a claim on the merits" under Rule 24(b), "the putative intervenor must ordinarily present: (1) an independent ground for subject[-]matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC*, 146 F.3d at 1046. "In exercising its discretion" to decide whether permissive intervention is warranted, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

We start first with the jurisdictional question. The requirement of an independent basis of jurisdiction arises almost exclusively in diversity cases, not federal-question cases. Thus, it is black-letter law that "[i]n federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant." 7C Charles Alan Wright et al., *Federal Practice and*

*Procedure* § 1917, at 601 (3d ed. 2007). The independent-grounds-for-jurisdiction factor concerns a movant who seeks to inappropriately expand the court's jurisdiction, and thus it "does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims"—which is precisely the case here. *Freedom from Religion Found., Inc v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011); *see also* Am. Compl. ¶ 17 (federal-question jurisdiction); *see also* Answer of Defendant-Intervenor Anschutz Exploration Corporation to Plaintiffs' First Am. Compl. (not asserting any counterclaims or cross-claims). For that reason, the Court need not consider independent grounds for its jurisdiction over AEC.

As to the second inquiry, "Rule 24(b)'s timeliness analysis largely mirrors that of Rule 24(a)." *Roane v. Gonzales*, 269 F.R.D. 1, 5 (D.D.C. 2010), *vacated in part sub nom. Roane v. Tandy*, No. 12-5020, 2012 WL 3068444 (D.C. Cir. July 6, 2012), and *rev'd and remanded sub nom. Roane v. Leonhart*, 741 F.3d 147 (D.C. Cir. 2014)*.* And even though "many courts analyze the timeliness factor under Rule 24(b) more strictly than they analyze timeliness under Rule 24(a)," *id.*, AEC's motion is timely for the reasons detailed above, *supra* pp. 6–8.

Finally, there can be no question that AEC satisfies the third factor—its defenses share common questions of law and fact with those raised in this case because it is a leaseholder whose property rights this Court has been asked to vacate, and it seeks to intervene to defend those property rights. To be sure, many of AEC's defenses are likely to be aligned to some degree with BLM's, if BLM under the Biden Administration defends the actions it took under the Trump Administration. But AEC's defenses go further because it is AEC that may be directly affected, as a real-property owner, by the claims in this case. AEC's existing interests in the federal leases reflect AEC's investment of millions of dollars in those leases, all of which are subject to

Plaintiffs' challenge. Should Plaintiffs' action prove successful, AEC would suffer economic injury and harm to its rights in leases on lands underlying the challenged plans.

Finally, AEC's intervention will not unduly delay or prejudice the adjudication of any of the rights of the parties to the lawsuit. AEC's entry comes in the earliest stage in the case. The federal government has not yet responded to the Amended Complaint, and the Court has not yet issued a scheduling order governing this case. Because AEC's defenses are aligned with the central issues in the case and its presence will not delay or otherwise alter the course of the proceedings to any party's prejudice, it should be permitted to intervene under Rule 24(b)(1)(B).

## III.    In the alternative, at a minimum, the Court should consider AEC a necessary party under Rule 19.

Federal Rule of Civil Procedure 19(a)(1) states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction *must be joined as a party* if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1) (emphasis added). Rule 19(a)(2) states that if "a person has not been joined as required, the court *must* order that the person be made a party." Fed. R. Civ. P. 19(a)(2) (emphasis added).

The D.C. Circuit employs a two-step analysis for the required joinder of parties. First, to determine whether an absent party is required, the Court must consider whether that party has a legally protected interest in the subject of the action such that the party's absence may impair or impede his or her ability to protect that interest. *Ramah Navajo Sch. Bd. v. Babbitt*, 87 F.3d 1338, 1351 (D.C. Cir. 1996); *see* Fed. R. Civ. P. 19(a)(1). If the Court determines that a party is required, it must next balance the equitable factors set forth in Rule 19(b) to decide if the party is

indispensable. *Ramah*, 87 F.3d at 1351; *see also Three Affiliated Tribes of Fort Berthold Indian Reservation v. United States*, 637 F. Supp. 2d 25, 30 (D.D.C. 2009).

The D.C. Circuit has "summed up the Rule 19 inquiry as posing three questions: Should the absentee be joined, i.e., is it necessary to the litigation? If so, can the absentee be joined? And finally, if the absentee should but cannot be joined, may the lawsuit nonetheless proceed 'in equity and good conscience'?" *Nanko Shipping, USA. v. Alcoa, Inc.*, 850 F.3d 461, 464–465 (D.C. Cir. 2017); *see Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d 1491, 1494 (D.C. Cir. 1995).

> Rule 19 promotes fair treatment of nonparties in certain circumstances where their interests, and particularly their due process rights, are at risk from litigation between others. It also seeks to avoid multiple and wasteful litigation, such as where the absence of a party would prevent the court from granting the relief sought or expose an existing party (typically the defendant) to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Rule 19 does not apply merely because dispute resolution would be more efficient with the nonparty's participation, nor because the pending case could yield precedent adverse to the absentee's interests.

*Id.* In fact, the risk that a necessary party could be left out of a case is so critical that courts have an "independent duty to raise a Rule 19(a) issue *sua sponte*." *Cook v. FDA*, 733 F.3d 1, 6 (D.C. Cir. 2013). Indeed, "in the absence of [necessary] parties a court of course cannot validly enter a judgment." *W. Coast Expl. Co. v. McKay*, 213 F.2d 582, 592 (D.C. Cir. 1954). And it is a firmly established maxim that a judgment that substantially affects the rights of a party who is not joined violates due process. *Hanson v. Denckla*, 357 U.S. 235, 254–55 (1958).

AEC is a required party under Rule 19(a)(1)(A). Without AEC, the Court cannot award Plaintiffs the "complete relief" they seek. *See* Fed. R. Civ. P. 19(a)(1)(A). Part of the relief Plaintiffs seek is to cancel AEC's leases, and the Court cannot award that relief without joining AEC as a party: "There is a general rule that where rights sued upon arise from a contract all

parties to it must be joined." *Ward v. Deavers*, 203 F.2d 72, 75 (D.C. Cir. 1953); *see also Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 390–91 (D.D.C. 2017) (citing *Corsi v. Eagle Publ'g, Inc.*, No. 1:07-CV-02004ESH, 2008 WL 239581, at *4 (D.D.C. Jan. 30, 2008) ("[M]any court decisions … have concluded that an absent contracting party ... must be joined under Rule 19(a)." (citing cases)), and 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1613 (3d ed. 2017) ("In cases seeking reformation, cancellation, rescission, or otherwise challenging the validity of a contract, all parties to the contract probably will have a substantial interest in the outcome of the litigation and their joinder will be required.")).[3]

AEC also is a required party under Rule 19(a)(1)(B)(i). A party to a lease agreement is a required party under Rule 19 when the lawsuit—like this one—seeks to set aside the lease. *See, e.g.*, *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983) ("[P]arties who hold royalty interests, assignments, or interests in the title of federal leases, in the absence of special circumstances not present here, are indispensable parties in an action to cancel the lease or to try title to the lease."); *see also Sierra Club v. Hathaway*, 579 F.2d 1162, 1166 (9th Cir. 1978) (where environmental organizations sued to prevent Secretary of Interior from executing lease agreements, lessees were persons who should have been joined; lessees' interests were not distinct and severable and court order prohibiting Secretary from allowing lessees to undertake any exploration operations pursuant to their leases would have injured lessees); *Cole v. Cont'l*

---

[3] *See also Kettle Range Conservation Group v. BLM*, 150 F.3d 1083, 1087 (9th Cir. 1998) (per curium) (holding that "the district court correctly determined that it was without authority to rescind the contract in the absence of joinder of the private parties."); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1156–57 (9th Cir. 2002) ("[A] party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975).

*Oil Co.*, 240 F. Supp. 642, 645 (W.D. Okla. 1965) (holding that person with interest in oil-and-gas lease was an indispensable party in action to cancel lease).

AEC also is a required party under Rule 19(a)(1)(B)(ii) because if the Court were to decline to join AEC as a defendant, that would "leave an existing party" (the federal government) subject to a substantial risk of facing inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B)(ii). Because AEC would not be a party to this case, nothing would bar AEC from bringing due-process claims—in the Tenth Circuit where the leases are located—against the government seeking specific performance to protect its property rights. *See Robbins v. BLM*, 438 F.3d 1074, 1084 (10th Cir. 2006) (litigant can bring due-process claim against government seeking specific performance even when claim depends on a contract with the government). And if a court agreed with AEC's contention that vacating the leases violates due process, then the government would be in the impossible position of facing inconsistent obligations.

In sum, AEC is a required party under Rule 19(a)(1) and must be joined in this lawsuit.

## CONCLUSION

Granting AEC's motion to intervene would recognize that AEC is a required party. It would also accord with both the liberal approach to intervention and the purpose behind Rule 24. The Court should therefore grant this motion and either join AEC as a required party under Rule 19 or grant AEC's motion to intervene under Rule 24.

Respectfully submitted this 10th day of May, 2021.

/s/ Andrew C. Lillie
Andrew C. Lillie
Jessica Black Livingston
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, CO 80202
andrew.lillie@hoganlovells.com
jessica.livingston@hoganlovells.com
Phone: (303) 899-7300
Facsimile: (303) 899-7333

*Attorneys for Proposed Defendant–Intervenor
Anschutz Exploration Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of May, 2021, I served a true and correct copy of the

foregoing **ANSCHUTZ EXPLORATION CORPORATION'S MOTION TO INTERVENE**

via the Court's electronic case filing system that will cause the foregoing to be served upon all

counsel of record.

/s/ Andrew C. Lillie