IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILDEARTH GUARDIANS; and PHYSICIANS FOR SOCIAL RESPONSIBILITY,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>DEBRA HAALAND,  Secretary, U.S. Department of the Interior; and U.S. BUREAU OF LAND MANAGEMENT,<br><br>　　　　　　　　Defendants,<br><br>AMERICAN PETROLEUM INSTITUTE; STATE OF WYOMING, NAH UTAH LLC, and ANSCHUTZ EXPLORATION CORPORATION,<br><br>　　　　　　　　Intervenor-Defendants. | No. 1:21-cv-00175-RC |

**INTERVENOR-DEFENDANT AMERICAN PETROLEUM INSTITUTE'S RESPONSE TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND**

Pending before the Court are three lawsuits brought by plaintiffs WildEarth Guardians *et al.*, which collectively challenge as purportedly violating the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, decisions by the U.S. Secretary of the Interior and the Bureau of Land Management to conduct more than three dozen oil and gas lease sales pursuant to the Mineral Leasing Act ("MLA"), 30 U.S.C. § 181.[1]  Intervening defendant American Petroleum Institute ("API") has

---

[1] *WildEarth Guardians v. Haaland,* No. 1:16-cv-01724 (the "2016 *WildEarth Guardians* lawsuit"); *WildEarth Guardians v. Haaland*, No. 1:20-cv-056 (the "2020 *WildEarth Guardians*

filed motions in all three lawsuits seeking the dismissal of the vast majority of these lease sale challenges.

In all three lawsuits, API asserts that these claims are barred by the MLA statute of limitations, which provides that "[n]o action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter." 30 U.S.C. § 226-2.  API asserts that plaintiffs' challenge to all six lease sales now at issue in the 2016 *WildEarth Guardians* lawsuit are time-barred;[2] that plaintiffs' challenges to two of the three lease sales now at issue in the 2020 WildEarth *Guardians* lawsuit are time-barred;[3] and that plaintiffs' challenges to 23 of the 28 lease sales now at issue in the 2021 *WildEarth Guardians* lawsuit are time-barred.[4]  API also asserts that with respect to the 23 time-barred lease sale challenges in the 2021 *WildEarth Guardians* lawsuit, two are also barred by res judicata; one is also barred by waiver; and 17 are also barred by laches.[5]

The Government has filed motions voluntarily to remand (without vacatur) in all three lawsuits.[6]  API submits that the Court should first resolve API's motions to dismiss, and then

---

lawsuit"); *WildEarth Guardians v. Haaland*, No. 1:21-cv-00175 (the "2021 *WildEarth Guardians* lawsuit").

[2] *See* Intervenor-Defendant American Petroleum Institute's Motion To Dismiss in *WildEarth Guardians v. Haaland,* No. 1:16-cv-01724, Docket No. 201 (Aug. 2, 2021).

[3] *See* Intervenor-Defendant American Petroleum Institute's Motion To Dismiss in Part in *WildEarth Guardians v. Haaland*, No. 1:20-cv-056, Docket No. 55 (Aug. 2, 2021).

[4] *See* Intervenor-Defendant American Petroleum Institute's Motion To Dismiss In Part, Or, In The Alternative, For Partial Summary Judgment in *WildEarth Guardians v. Haaland*, No. 1:21-cv-00175, Docket No. 28 (June 9, 2021).

[5] *See id*.

[6] *See* Federal Defendants' Second Motion For Voluntary Remand Without Vacatur and Memorandum In Support in the 2016 *WildEarth Guardians* lawsuit, Docket No. 200; Federal Defendants' Second Motion For Voluntary Remand Without Vacatur and Memorandum In Support in the 2020 *WildEarth Guardians* lawsuit, Docket No. 54; Federal Defendants' Motion For Voluntary Remand Without Vacatur and Memorandum In Support in the 2021 *WildEarth Guardians* lawsuit, Docket No. 43.

entertain remand of only those lease sale challenges the Court determines should not be dismissed.

Three reasons support that result:

First, although not mandatory, federal district courts routinely take up and resolve limitations defenses before addressing any other non-jurisdictional issues in the case.

Second, Congress' very purpose in enacting the relatively short, 90-day limitations period applicable to plaintiffs' claims was to eliminate uncertainty and allow lessees to proceed promptly with the massive undertakings associated with oil and gas development.  Congress achieved that goal by foreclosing any lawsuit "contesting a decision of the Secretary involving any oil and gas lease" unless the lawsuit is "taken within ninety days" of the Secretary's final decision.  An open ended remand of plaintiffs' legal challenges for further NEPA analysis by the agency, a process that would likely take many months at best, is antithetical to Congress' core purpose in enacting the MLA statute of limitations.  Resolving API's motion to dismiss first would, by contrast, advance that goal materially, because dismissal would eliminate the plaintiff lawsuits' stain on title to the leases issued through the challenged lease sales.

Third, a court has broad discretion whether to grant a motion to remand.  Under facts with many similarities to the instant litigation, this Court in two related recent decisions denied Government motions for voluntary remand and deferred remand until after a core legal issue was resolved, finding that this would "conserve the courts' and the parties' resources," especially given that, as here with respect to the statute of limitations issue, the legal issue had been fully briefed. *See Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95 (D.D.C. 2019) ("*American Waterways I*"); *Am. Waterways Operators v. Wheeler*, 507 F. Supp. 3d 47, 53, 56 (D.D.C. 2020) ("*American Waterways II*").

For all these reasons, the Court should defer action on the Government's pending motions for voluntary remand until it has resolved API's pending motions to dismiss.

3

ARGUMENT

A.     **Courts Routinely Resolve Limitations Defenses First.**

If an action is found to be time-barred, the case is properly dismissed without reaching the merits or other non-jurisdictional issues. *LoPiccolo v. Am. Univ.*, 840 F. Supp. 2d 71, 79 n.12 (D.D.C. 2012); *Sparkle Hill, Inc. v. Interstate Mat Corp.,* No. 11–10271, 2014 WL 2215756, at *2 (D. Mass. May 23, 2014) ("I consider the statute of limitations defense before the merits because I find it dispositive of the case."). District courts therefore routinely resolve statute of limitations issues first. That is the appropriate approach here, too. *Cf. Carter v. Richland Holdings, Inc.,* No. 2:16-cv-02967, 2018 WL 4566667, at *3 (D. Nev. Sept. 24, 2018) ("The Court must first resolve the parties' arguments regarding the applicable statute of limitations."); *Akins v. Wash. Metro. Area Transit Auth.,* 729 F. Supp. 903, 905 (D.D.C. 1990) ("Before addressing the merits, the Court must consider Mutual's claim that Akins failed to sue within the three-year District of Columbia statute of limitations period on contract actions."); *Bunton v. Geithner*, No. A–10–CA–542, 2012 WL 976060, at *1 (W.D. Tex. Mar. 19, 2012) ("Before examining the substantive merits of the Defendant's motion, the Court will address the Defendant's argument that Bunton's claims are barred by the statute of limitations, as that argument would render moot the remaining contentions."); *Walker v. TA Operating LLC,* No. 4:14-cv-4055, 2016 WL 1452427, at *3 (W.D. Ark. Apr. 13, 2016) ("Before discussing the merits of Plaintiff's hostile work environment claim, the Court will consider whether his claims are time barred pursuant to a six-month contractual statute of limitations period…."); *Ray v. Levi Strauss & Co.*, No. 3:04-CV-558, 2006 WL 1028892, at *2 (S.D. Miss. Apr. 18, 2006) ("Before reaching the merits of Plaintiffs' common law claims, the Court must first address the statute of limitations issue raised by Levi."); *Bank of Am., N.A. v. Sunrise Ridge Master Homeowners Ass'n,* No. 2:16-cv-00467, 2019 WL 1245780, at *2 (D. Nev. Mar. 18, 2019) ("The Court will first address Defendants' statute of limitations arguments before addressing the parties' arguments as to the merits."); *Williams v. Linguard*, No. 02-C-0472-C,

2003 WL 23269344, at *2 (W. D. Wisc. May 14, 2003) ("defendants raise an affirmative defense in their motion that must be decided before the court considers the merits of plaintiff's claims; that is, whether plaintiff's claims are barred by the applicable statute of limitations."); *Bales v. Comm'r of Internal Revenue*, 22 T.C. 355, 358 (T.C. 1954) ("Before turning to the merits of the question of petitioner's liability as transferee, we will consider whether the statute of limitations bars the respondent from proceeding against her."); *PeoplesSouth Bank, v. Farmer & Malone, P.A.*, No. 1:11cv36, 2012 WL 2568199, at *3 (M.D. Ala. July 2, 2012) ("Before this court can consider the merits, it must first address the law firm's contention that this case is barred by the statute of limitations."); *Lewis v. Xerox Corp.*, No. 95 C 7013, 1998 WL 160893, at *4 (N. D. Ill. Mar. 31, 1998) ("Before the court reaches Xerox's substantive arguments, the court must first resolve Xerox's assertion that Lewis's claims are barred by the statute of limitations.")

> **B.     Remanding These Lawsuits Without First Resolving API's Limitations Defense Would Vitiate the Very Purpose Congress Sought to Achieve in Enacting the MLA Statute of Limitations.**

An additional reason militates strongly in favor of the Court first resolving the pending motions to dismiss before turning to the issue of remand. As detailed in API's motions to dismiss, Congress enacted a compact, 90-day limitations period for challenges to decisions relating to oil and gas leases on federal lands, for the very purpose of eliminating uncertainty and allowing lessees to get on promptly with the massive undertakings associated with oil and gas development. Congress achieved that goal by foreclosing any lawsuit "contesting a decision of the Secretary involving any oil and gas lease" unless the lawsuit is "taken within ninety days" of the Secretary's final decision.

Remanding the legal challenges for an uncertain agency process lasting months or years would wreak havoc with that goal. Resolving API's motion to dismiss first would, by contrast, advance that goal.

The MLA's very "purpose . . . was to promote the orderly development of the oil and gas deposits in the publicly owned lands of the United States through private enterprise." *Harvey v. Udall*, 384 F.2d 883, 885 (10th Cir. 1967) (quotation omitted). Congress in the 1960 MLA amendments sought to create a "statute of limitations providing that any action under the Administrative Procedure Act to review a decision of the Secretary involving an oil and gas lease must be initiated within 90 days after the final decision of the Secretary." S. Rep. No. 86-1549 (1960), *as reprinted in* 1960 U.S.C.C.A.N. 3313. The purpose was to reverse "a potentially dangerous slackening in exploration for development of domestic reserves of oil and gas" by "remov[ing] certain legislative obstacles to exploration for development of the mineral resources of the public lands and spur greater activity for increasing our domestic reserves." *Id*. at 3314–15. *See also id*. at 3317 ("Such a provision will remove a potential cloud on acreage subject to leasing.").

In short, the 90-day deadline was designed to provide lessees certainty and comfort. A remand here, without first resolving the limitations issue, would be antithetical to those purposes. Lessees will be left completely uncertain as to their rights, or indeed, whether those rights will ultimately be vindicated or vitiated. The natural—and statutory—incentives to make substantial investments toward the development of the leases would be severely circumscribed if not eliminated. Plaintiffs' challenges would remain a "cloud on acreage subject to leasing." 1960 U.S.C.C.A.N. at 3317. Remanding the cases would thus "resurrect the very problems that Congress sought to eliminate," *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989), by imposing a 90 day limitations period—erect "obstacles" that would undercut prompt development of oil and gas reserves. *See* 1960 U.S.C.C.A.N. at 3314–15.

### C. This Court Has Broad Authority to Defer the Government's Remand Motion Until After the Limitations Defense is Resolved, as Exemplified by its *American Waterways* Decisions.

*American Waterways I* and *American Waterways II* involved a Clean Water Act provision

allowing a state to apply to the U.S. Environmental Protection Agency ("EPA") to prohibit the discharge of marine vessel sewage into some or all of its waters, if the state determined that those waters required greater environmental protection than otherwise afforded by EPA's regulations.  Approval was contingent on EPA determining that "adequate facilities for the safe and sanitary removal and treatment of sewage from all vessels are reasonably available."  *See American Waterways I*, 427 F. Supp. 3d at 96.  After granting such an application by the State of Washington, EPA was sued by a shipping trade association, challenging EPA's having made that determination without considering compliance costs for vessels.  The State and various environmental organizations intervened in defense of the EPA approval.  *See id*. at 97.

EPA then filed a motion to remand (but not vacate) the challenged determination so that "it can consider costs in the underlying analysis."  *Id*.  As here, the plaintiff supported the remand request (while also seeking vacatur), while the intervenors opposed.

This Court denied remand.  While recognizing that EPA satisfied the initial requirement for voluntary remand, that "the agency intends to take further action with respect to the original agency decision on review," *id*. (quoting *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017)), this Court recognized that even with that threshold requirement satisfied, a court has "broad discretion to grant or deny an agency's motion to remand."  *Id.* (quoting *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018)).  *See also Keltner v. United States*, 148 Fed. Cl. 552, 563 (Fed. Cl. 2020) ("The case law . . . makes clear that where an agency requests a remand without confessing error, the agency must express some intent to reconsider the original agency decision that is the subject of the legal challenge, *after which the court has discretion to grant or deny the motion.*") (denying remand) (emphasis added).

Furthermore, although remand may be granted based on a new legal decision or the passage of new legislation that leads the Government to acknowledge error in its prior decision, *American Waterways I,* 427 F. Supp. 3d at 97 (citing *Util. Solid Waste Activities,* 901 F.3d at 436), the

7

Government here pointedly does not confess error, *see*, *e.g.*, Government's Motion For Remand in 2021 *WildEarth Guardians* Lawsuit, at 4.  Indeed, while it points to this Court's *Bernhardt*[7] and *Zinke*[8] decisions finding certain deficiencies in BLM's examination of the GHG emissions-related climate change impacts of oil and gas leasing in certain leasing decisions, the Government merely contends, *e.g.*, that "[t]he analyses supporting the challenged leasing decisions ***are similar in some respects*** to those that the Court considered in *Bernhardt* and *Zinke*."  *See id.* at 5 (emphasis added).

That position is considerably more equivocal than that taken by the Government in *American Waterways I*, where the Government asserted in its remand motion that "[h]aving reviewed the complaint, the Act, judicial precedent, and the record, [EPA] now believes that it should have considered compliance costs in making the challenged determination."  427 F. Supp. 3d at 98, quoting EPA's Motion at 4.  Yet this Court found that even that direct statement did not rise to a confession of error, *id.*,[9] and "decline[d] to exercise its discretion to grant EPA's remand request," *id.* at 99.

This Court concluded that remand "would unduly prejudice the Environmental Intervenors' interests" given that they had engaged in extensive study of the no-discharge zone, engaged in public outreach, and instituted a no-discharge zone in reliance on EPA's determination.  *Id.*  "Granting EPA's remand request would leave all this in limbo," because "the court cannot blind itself to the possibility that EPA could reach a different decision on remand."  *Id.*  "Washington initiated the Puget Sound no-discharge zone only after receiving EPA's decision authorizing the State to" do so, "a decision the State rightfully understood to be final."  *Id*.

---

[7] *WildEarth Guardians v. Bernhardt*, 502 F. Supp. 3d 237 (D.D.C. 2020).

[8] *WildEarth Guardians v. Zinke,* 368 F. Supp. 3d 41 (D.D.C. 2019).

[9] To be clear, API is not suggesting that Federal Defendants should have confessed error here, either.  To the contrary.

In the face of this decision, EPA proceeded formally to "admit[] error," issuing a memorandum declaring that it had previously taken a "legally erroneous position," and stating that a Supreme Court decision "compels" EPA to consider the costs of compliance. *See American Waterways II*, 507 F. Supp. 3d at 53, 56. EPA then sought reconsideration of the denial of its motion to remand. *Id*. at 57. This Court denied that motion, because "[w]hile EPA has now admitted error, the court is not convinced that justice requires granting EPA's motion for reconsideration, which would have the effect of preempting resolution of the pending motions for summary judgment." *Id*. This Court noted that "[o]ne of the driving purposes of remanding a matter to an agency is to conserve "the courts' and the parties' resources" (citations omitted), and that this "objective would not be served were the court to remand this case in its present posture," given that briefing had been completed. *Id.* at 57–58.

The parallels to the current lawsuit are striking. Here, briefing on the statute of limitations issue has been completed in the 2021 *WEG* lawsuit,[10] and the statute of limitations arguments advanced in the 2016 and 2020 *WEG* lawsuits are substantively identical.[11] The statute of limitations issue is thus ripe for resolution, just as was the fully briefed core legal issue in *American Waterways*. As was true in *American Waterways,* given that "the objective [of remand] is to conserve the courts' and the parties' resources," *American Waterways II*, 507 F. Supp. 3d at 57, this "objective would not be served were the court to remand this case in its present posture." *Id.* at 58.

Moreover, remand "would unduly prejudice [the lessees'] interests," *American Waterways I,* 427 F. Supp. 3d at 99, given that they acquired their leases in good faith at a cost of tens of millions of dollars; expended substantial resources to obtain BLM approval of dozens of

---

[10] See 2021 *WildEarth Guardians* Lawsuit, Docket Nos. 28, 41, and 45.

[11] See 2016 *WildEarth Guardians* Lawsuit, Docket No. 201; 2020 *WildEarth Guardians* Lawsuit, Docket No. 55.

Applications for Permit to Drill ("APDs") for drilling operations on the affected leases; and spent tens of millions of dollars drilling several wells.  *See* Intervenor-Defendant American Petroleum Institute's Motion To Dismiss In Part, Or, In The Alternative, For Partial Summary Judgment in *WildEarth Guardians v. Haaland*, No. 1:21-cv-00175, Docket No. 28 at 38–40 (June 9, 2021); *id.*, Intervenor-Defendant American Petroleum Institute's Reply Memorandum in Support of Motion to Dismiss in Part, or, In the Alternative, For Partial Summary Judgment, Docket No. 45 at 20–21 (Aug. 6, 2021)

Similarly, and again in parallel to the intervenors in *American Waterways*, the lessees obtained their leasehold interests "only after receiving [the Government's] decision authorizing" the lessees to do so, "a decision the [lessees] rightfully understood to be final." *American Waterways I,* 427 F. Supp. 3d at 99.

This Court's admonition in *American Waterways I* rings true here as well: "Granting [the Government's] remand request would leave all this in limbo," and "the court cannot blind itself to the possibility that [the Government] could reach a different decision on remand." *Id.*

## CONCLUSION

For all these reasons, the Court should defer ruling on the Government's motions to remand until after it has ruled on API's pending motions to dismiss.

Respectfully submitted,

August 13, 2021

*/s/ Steven J. Rosenbaum*
Steven J. Rosenbaum
 D.C. Bar No. 331728
Bradley K. Ervin
 D.C. Bar No. 982559
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone:  (202) 662-6000
Fax:  (202) 662-6291
srosenbaum@cov.com

*Attorneys for American Petroleum Institute*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of August, 2021, I caused a true and correct copy of the foregoing to be filed with the Court electronically and served by the Court's CM/ECF System upon the listed counsel:

Samantha Ruscavage-Barz
Daniel L. Timmons
WildEarth Guardians
301 N. Guadeloupe Street, Suite 201
Santa Fe, NM 87501
Tel: (505) 410-4180
sruscavagebarz@wildearthguardians.org
dtimmons@wildearthguardians.org

Kyle Tisdel
Western Environmental Law Center
208 Paseo del Pueblo Sur, Suite 602
Taos, NM 87571
Tel: (575) 613-8050
tisdel@westernlaw.org

*Counsel for Plaintiffs*

Michael Sawyer
Michelle-Ann Williams
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 514-5273
michael.sawyer@usdoj.gov
michelle-ann.williams@usdoj.goc

*Counsel for Federal Defendants*

Matt VanWormer
Kelly Shaw
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-7895
matt.vanwormer@wyo.gov
kelly.shaw@wyo.gov

*Counsel for Intervenor State of Wyoming*

Emily C. Schilling
Holland & Hart LLP
222 South Main, Suite 2200
Salt Lake City, UT 84101
Tel: (801) 799-5753
eschilling@hollandhart.com

*Counsel for Intervenor NAH Utah, LLC*

Andrew C. Lillie
Hogan Lovells US LLP
1601 Wewatta Street, Suite 900
Denver, CO 80202
Tel: (303) 899-7339
andrew.lillie@hoganlovells.com

*Counsel for Intervenor Anschutz Exploration Corporation*

*/s/ Steven J. Rosenbaum*
Steven J. Rosenbaum
