# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILDEARTH GUARDIANS, *et al.*, | |
| Plaintiffs, | |
| v. | No. 1:21-cv-00175-RC |
| DEBRA HAALAND, *et al.*, | |
| Defendants, | |
| and | |
| AMERICAN PETROLEUM INSTITUTE, *et al.*, | |
| Intervenor-Defendants. | |

## INTERVENOR-DEFENDANTS AMERICAN PETROLEUM INSTITUTE'S AND STATE OF WYOMING'S OPPOSITION TO MOTION FOR VOLUNTARY DISMISSAL

James C. Kaste
Deputy Attorney General
Water & Natural Resources Division
109 State Capitol
Cheyenne, WY 82002
(307) 777-6946 phone
(307) 777-3542 fax
james.kaste@wyo.gov

*Counsel for the State of Wyoming*

Steven J. Rosenbaum
Bradley K. Ervin
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone:  (202) 662-6000
Fax:  (202) 662-6291
srosenbaum@cov.com

*Attorneys for American Petroleum Institute*

March 18, 2022

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................................... 3

ARGUMENT .......................................................................................................................... 4

I.      The Court Must Consider The Prejudice To Lessees In Assessing Plaintiffs' Motion. ............................................................................................................................. 4

II.     Congress Dictated That Decisions Involving Oil And Gas Leases Are Final After 90 Days, And Revisiting The Challenged Leasing Decisions For Further Review Thwarts Congressional Policy And Undermines Industry Reliance Interests. ................... 5

CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Am. Waterways Operators v. Wheeler,*
    427 F. Supp. 3d 95 (D.D.C. 2019) ............................................................... 2, 5, 7

*Cal. Save Our Streams Council, Inc. v. Yeutter,*
    887 F.2d 908 (9th Cir. 1989) ........................................................................ 7

*Harvey v. Udall,*
    384 F.2d 883 (10th Cir. 1967) ..................................................................... 5

*Keltner v. United States,*
    148 Fed. Cl. 552 (2020) ............................................................................... 8, 9

*Limnia, Inc. v. U.S. Dep't of Energy,*
    857 F.3d 379 (D.C. Cir. 2017) ..................................................................... 2, 4, 5

*PGBA, LLC v. United States,*
    389 F.3d 1219 (Fed. Cir. 2004) ................................................................... 4

*Samuels v. Mackell,*
    401 U.S. 66 (1971) ...................................................................................... 4

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC,*
    137 S.Ct. 954 (2017) ................................................................................... 9

*TOMAC, Taxpayers of Michigan Against Casinos v. Norton,*
    433 F.3d 852 (D.C. Cir. 2006) ..................................................................... 8

*Util. Solid Waste Activities Grp. v. EPA,*
    901 F.3d 414 (D.C. Cir. 2018) ..................................................................... 5

*W. Org. of Resource Councils v. Zinke,*
    892 F.3d 1234 (D.C. Cir. 2018) ................................................................... 8

**Statutes**

*30 U.S.C. § 226-2 ............................................................................................. 1, 6

Act of Feb. 25, 1920, ch. 85, § 32, 41 Stat. 437 ............................................... 1

**Other Authorities**

Conf. Rep. No. 86-2135 (1960), 1960 WL 4898, *as reprinted in* 1960 U.S.C.C.A.N. 3313 ........ 6

*S. Rep. No. 86-1549 (1960), *as reprinted in* 1960 U.S.C.C.A.N. 3313 .............................. 1, 6, 7

**Regulations**

40 C.F.R. § 1502.9(d) ........................................................................................ 8

*Authorities chiefly relied upon

## INTRODUCTION

Plaintiffs' pending motion to dismiss this lawsuit, for the purpose of returning the lease sale decisions to the Bureau of Land Management ("BLM") for further National Environmental Policy Act ("NEPA") analyses and decision-making, represents a frontal assault on clearly-stated Congressional intent.  Indeed,  Plaintiffs' efforts, if allowed to come to fruition, would make this case a poster child for the very delays, uncertainties, and insecurity of investment and development efforts that Congress explicitly sought to eliminate.

Congress imposed a short, 90-day limitations period for any lawsuit "contesting a decision of the Secretary involving any oil and gas lease."  30 U.S.C. § 226-2 ("Section 226-2").  It did so in order to further the purpose of the Mineral Leasing Act ("MLA"): "promote the mining of . . . oil . . . on the public domain."  Act of Feb. 25, 1920, ch. 85, § 32, 41 Stat. 437.  For an agency decision to conduct an oil and gas lease sale, Congress thus granted to the resulting lessees contractual and property rights that cannot be challenged after 90 days, thereby incentivizing lease development.  As Congress explained in enacting Section 226-2, such protection promotes the public interest by reversing "a potentially dangerous slackening in exploration for development of domestic reserves of oil and gas," and removing "a potential cloud on acreage subject to leasing." S. Rep. No. 86-1549 (1960), *as reprinted in* 1960 U.S.C.C.A.N. 3313, 3314–15, 3317.

As Intervenor-Defendant American Petroleum Institute's ("API") Motion to Dismiss in Part (Dkt. No. 28-1) explains, Plaintiffs challenged 23 of the 28 leasing decisions at issue in this case after Congress's statutory bar expired.  Yet, in response to these claims that accordingly are barred and not properly before the Court, Plaintiffs and—through a Settlement Agreement— Federal Defendants now ask this Court to return the challenged leasing decisions to BLM for further NEPA review.  *See* Pls.' Mot. for Voluntary Dismissal (Dkt. No. 71); Stipulated Settlement Agreement (Dkt. No. 71-1).

1

This request to "revisit the challenged agency decision[s] on review," *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 381 (D.C. Cir. 2017), should be denied.  While a reviewing court typically possesses considerable discretion over requests to remand a challenged action to the agency, through Section 226-2 Congress has spoken plainly and clearly against any such "revisit[ing]" of the leasing decisions.  After 90 days, those decisions are final.  They are no longer subject to challenge.  And lessees have relied on these rights finalized under congressional directive by investing in the planning and execution of development operations.  Both congressional policy and industry reliance oppose granting a motion with the effect of remanding the challenged leasing decisions to BLM.  *See Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 98–99 (D.D.C. 2019) (focusing on reliance interests in denying motion for voluntary remand supported by plaintiff and defendant, but opposed by intervenor).

Plaintiffs should not be able to circumvent a straightforward congressional directive by filing time-barred claims and then securing an agreement from Federal Defendants to review the very administrative agency decisions intentionally shielded by Congress.  Accepting Plaintiffs' motion, failing to address Section 226-2's application to Plaintiffs' challenges, and instead sending the protected leasing decisions back to BLM for an interminable NEPA process creates the very delays in energy development that Congress specifically intended to avoid.  This Court should therefore deny Plaintiffs' motion, and first resolve API's pending motion to dismiss 23 of the 28 challenges as time-barred.

To aid in the Court's consideration of these issues, Intervenor-Defendants request oral argument.[1]

---

[1] Intervenor-Defendant Anschutz Exploration Corporation joins in the arguments herein, and will also file a separate response to the Plaintiffs' Motion.

## BACKGROUND

This case involves Plaintiffs' NEPA challenges to 28 oil and gas lease sales on public lands in Colorado, New Mexico, Utah and Wyoming between December 2016 and December 2020. *See*, *e.g.*, Am. Compl. (Dkt. No. 13), ¶ 1 & Table A. In reaching its decisions to hold the challenged lease sales, BLM issued an Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") for each sale. *See* API Mem. in Supp. of Motion to Dismiss in Part (Dkt. No. 28-1), at 8–9.

On February 17, 2021, Plaintiffs filed their operative Amended Complaint in this action seeking "declaratory and injunctive relief against [Federal Defendants], challenging as arbitrary federal leasing authorizations encompassed in" the challenged lease sales. Am. Compl., ¶ 15. To remedy these allegedly improper "leasing decisions," *see*, *e.g.*, *id.* ¶ 101, made on the basis of allegedly inadequate NEPA reviews, Plaintiffs asked this Court to, *inter alia*, (1) "[d]eclare that Federal Defendants' leasing authorizations . . . violate NEPA," and (2) "[v]acate Federal Defendants' leasing authorizations," *id.*, Requested Relief, ¶¶ A–B.

On June 9, 2021, API filed a motion to dismiss Plaintiffs' challenges to 23 of the 28 leasing decisions because Plaintiffs failed to bring suit within the 90-day limitations period established by Section 226-2. *See* API Mot. to Dismiss in Part (Dkt. No. 28). Briefing on API's Motion concluded on August 6, 2021. *See* API Reply in Supp. of Mot. to Dismiss in Part (Dkt. No. 45). API has also explained that the Court should resolve API's threshold challenge to Plaintiffs' claims before addressing Plaintiffs' and Federal Defendants' requests to stay or remand the litigation. *See*, *e.g.*, API Response to Defendants' Mot. for Voluntary Remand (Dkt. No. 52); API Opp. to Pls.' Mot. to Stay (Dkt. No. 54).

## ARGUMENT

**I.      The Court Must Consider The Prejudice To Lessees In Assessing Plaintiffs' Motion.**

Although styled a Motion for Voluntary Dismissal, Plaintiffs' motion—to which the Federal Defendants agreed in the Settlement Agreement—is in effect a voluntary remand of the challenged leasing decisions to BLM.  Indeed, the underlying Settlement Agreement provides that "BLM will conduct additional NEPA analysis for the . . . remaining leasing decisions challenged in this litigation, consistent with the Court's prior decisions in *WildEarth Guardians v. Haaland*, 16-cv-1724 (D.D.C.)."  *See* Stipulated Settlement Agreement, ¶ 1.  *See also id.* ¶ 4 (providing that "Plaintiffs will submit to the Court . . . a motion for dismissal").  This parallels the Federal Defendants' prior request for a voluntary remand.  *See* Fed. Defs.' Mot. for Voluntary Remand Without Vacatur (Dkt. No. 43), at 5 (requesting remand for further NEPA review upon agency determination that challenged leasing decisions "are similar in some respects to those that the Court considered" in *WildEarth Guardians v. Haaland*, 16-cv-1724 (D.D.C.)).

In these circumstances, Plaintiffs' reliance on general standards for considering voluntary motions to dismiss that do not involve remands to agencies for further action, *see* Pls.' Mot. at 2, 5–6, is misplaced.  Because the relief sought by Plaintiffs' motion—a remand to the agency—was agreed to by Federal Defendants and is identical in purpose and effect to the agency's request for voluntary remand, the standard for considering a voluntary remand applies.  *Compare PGBA, LLC v. United States*, 389 F.3d 1219, 1228 (Fed. Cir. 2004) (where "the practical effect of the two forms of relief will be virtually identical," the propriety of the relief "should be judged by essentially the same standards" (quoting *Samuels v. Mackell*, 401 U.S. 66, 71–73 (1971)).

"A district court has broad discretion to decide whether and when to grant an agency's request for a voluntary remand."  *Limnia*, 857 F.3d at 381.  Exercise of the discretion, however, is informed by certain limitations.  A requested remand "made in response to a party's

4

[Administrative Procedure Act ("APA")] challenge may be granted only when the agency intends to take further action with respect to the *original agency decision on review*." *Id*. at 386 (emphasis original). But while "[a]n agency's professed intent to revisit the challenged decision is a necessary condition to obtain remand, . . . it is not always a sufficient condition." *Am. Waterways*, 427 F. Supp. 3d at 98–99. Rather, "the reviewing court must 'consider whether remand would unduly prejudice the non-moving party . . . .'" *Id*. at 97–98 (quoting *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018)).

Here, the proposed remand for BLM to revisit the 23 challenged leasing decisions thwarts congressional policy and the significant public and private interests promoted and protected by that policy.[2]

## II. Congress Dictated That Decisions Involving Oil And Gas Leases Are Final After 90 Days, And Revisiting The Challenged Leasing Decisions For Further Review Thwarts Congressional Policy And Undermines Industry Reliance Interests.

Plaintiffs' and the Federal Defendants' request to remand the 23 challenged leasing decisions cannot square with Congress's decision to impose a short 90-day limitations period on challenges to MLA lease decisions. The MLA's very "purpose . . . was to promote the orderly development of the oil and gas deposits in the publicly owned lands of the United States through private enterprise." *Harvey v. Udall*, 384 F.2d 883, 885 (10th Cir. 1967) (quotation omitted). To that end, the language of Section 226-2 is broad:

---

[2] While a remand may be justified by an "intervening event outside of the agency's control" that leads the agency to acknowledge error in its prior decision, *Am. Waterways Operators*, 427 F. Supp. 3d at 97 (quotation omitted), Federal Defendants have confessed no such error in this case. At most, the Federal Defendants have stated that the challenged leasing decisions "are *similar in some respects* to those that the Court considered" in *WildEarth Guardians v. Haaland*, 16-cv-1724 (D.D.C.). Fed. Defs.' Mot. for Voluntary Remand Without Vacatur (Dkt. No. 43), at 5 (emphasis added).

> No action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter.

30 U.S.C. § 226-2.  That breadth is consistent with congressional intent.

Congress in the 1960 MLA amendments sought to create a "statute of limitations providing that any action under the Administrative Procedure Act to review a decision of the Secretary involving an oil and gas lease must be initiated within 90 days after the final decision of the Secretary." S. Rep. No. 86-1549 (1960), *as reprinted in* 1960 U.S.C.C.A.N. 3313, 3317.  The purpose was to reverse "a potentially dangerous slackening in exploration for development of domestic reserves of oil and gas" by "remov[ing] certain legislative obstacles to exploration for development of the mineral resources of the public lands and spur greater activity for increasing our domestic reserves."  *Id.* at 3314–15.  *See also id.* at 3317 ("Such a provision will remove a potential cloud on acreage subject to leasing.").[3]

In short, the 90-day deadline was designed to provide lessees certainty and comfort.  A remand here, without first resolving the limitations issue, would be antithetical to those purposes.  Lessees will be left completely uncertain as to their rights, or indeed, whether those rights will ultimately be vindicated or vitiated.  The natural—and statutory—incentives to make substantial investments toward the development of the leases would be severely circumscribed if not eliminated.  Plaintiffs' challenges and BLM's resulting review would remain a "cloud on acreage

---

[3] While the final version of Section 226-2 does not—unlike the original Senate version of the bill—specifically identify APA claims for exclusion, *see* 30 U.S.C. § 226-2, the Conference Committee that reconciled the competing Senate and House bills "accepted" the "principle of the Senate language," Conf. Rep. No. 86-2135 (1960), 1960 WL 4898, *as reprinted in* 1960 U.S.C.C.A.N. 3313, 3337, which aimed to apply a limitations period, at the very least, on "action[s] under the Administrative Procedure Act," 1960 U.S.C.C.A.N. at 3317.  Indeed, by eliminating any specific reference to the APA, the Conference Committee returned an even broader final version of Section 226-2, which bars any "action" regardless of the source of the cause of action.

subject to leasing." 1960 U.S.C.C.A.N. at 3317.  Remanding the cases would thus "resurrect the very problems that Congress sought to eliminate," *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989), by imposing a 90 day limitations period—erect "obstacles" that would undercut prompt development of oil and gas reserves.  *See* 1960 U.S.C.C.A.N. at 3314–15.

In practice, failure to enforce Congress's clear policy choice would prejudice lessees that paid significant sums to obtain leases with the understanding that their investments in developing the leases would be secure once the MLA's 90-day limitations period expired.  Instead, Plaintiffs and Federal Defendants seek to revisit leasing decisions that Congress—through Section 226-2— deems final.

Indeed, lease owners and operators have relied on the established congressional policy supporting and finalizing their issued leases in the years since the challenged leasing decisions. And if BLM "were to conclude on remand" that its original leasing decisions were erroneous and should be rescinded, it would "disrupt[] a years-long" process of development.  *Am. Waterways*, 427 F. Supp. 3d at 99.  Congress sought specifically to expedite development and foreclose the second-guessing that Plaintiffs and Federal Defendants seek.  "In view of these important reliance interests," the court should not permit BLM "to reconsider an otherwise final decision" to conduct each challenged lease sale.  *Id*. at 100.  Rather, remanding the legal challenges for an uncertain agency process lasting months or years would wreak havoc with the congressional goals established in the MLA generally, and Section 226-2 specifically.  Resolving API's motion to dismiss first would, by contrast, advance that goal.

The general standards for NEPA supplementation, *see* Pls.' Mot. at 5, are not to the contrary.  "Supplementation is only required under NEPA implementing regulations in the context of an [Environmental Impact Statement]."  *TOMAC*, *Taxpayers of Michigan Against Casinos v.*

*Norton*, 433 F.3d 852, 863 (D.C. Cir. 2006).  *See also W. Org. of Resource Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018); 40 C.F.R. § 1502.9(d) (setting out standards for "Supplemental environmental impact statements").  Here, however, Federal Defendants prepared EAs to analyze the challenged leasing decisions.

Nor does any "major Federal action" remain to be taken with respect to the 23 challenged leasing decisions to justify supplementation.  *See W. Org. of Resource Councils*, 892 F.3d at 1242–43.  To the contrary, the lease sales have been held, the leases issued—in many instances, years ago—and the time for challenging those agency actions under Section 226-2 expired before Plaintiffs filed suit.  With the conclusion of the challenged federal action—the lease sales— nothing remains of the challenged agency action, even assuming that the challenged NEPA analyses may "continue[] to govern actions that [take] place after the approval."  *Id.* at 1243 (holding NEPA supplementation not required where federal coal program management plan had concluded, and that continuing approval of coal leases under the plan did not constitute continuation of the challenged action); *id.* ("[T]he fact that actions continue to occur in compliance with the Program does not render the original action incomplete" and subject to NEPA supplementation.).

Even under NEPA, "reassessments must end at some point, or NEPA simply becomes a tool to stall new projects indefinitely, rendering agency decisionmaking intractable[.]"  *TOMAC*, 433 F.3d at 863 (cleaned up).  Section 226-2 forecloses such reassessments in favor of stated congressional policy.  *See Keltner v. United States*, 148 Fed. Cl. 552, 565 (2020) (denying request for voluntary remand where, *inter alia*, "the need for finality in this matter clearly outweighs the government's justification for requesting a voluntary remand").  Permitting the requested remand

simply provides Plaintiffs a second opportunity to challenge leasing decisions that they failed timely to file initially, contrary to congressional policy.

Ultimately, a voluntary remand is an exercise of equitable power. *See id.* at 557 ("The early case law recognized that the power of the courts to remand a challenged agency action back to the agency for review was equitable in nature." (citing cases)). Equity, however, cannot subvert a deadline established by Congress. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S.Ct. 954, 959 (2017) (holding that equitable laches doctrine cannot bar relief within a statute of limitations enacted by Congress). Instead, "[t]he enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule" rather than considerations of equity. *Id.* at 960. Where, as here, Congress has established a limitations period, disregard of that period in favor of an equitable remedy "would give judges a 'legislation-overriding' role that is beyond the Judiciary's power." *Id.* (quotation omitted). Because Plaintiffs' Motion for Voluntary Remand asks this Court to exercise its equitable discretion in a manner that conflicts with Section 226-2, underlying congressional policy, and the protected interests of lessees, this Court should deny the requested relief.

## CONCLUSION

For the foregoing reasons, this Court should deny the Motion for Voluntary Dismissal and instead first resolve API's pending Motion to Dismiss in Part.

March 18, 2022

Respectfully submitted,

*/s/ Steven J. Rosenbaum*
Steven J. Rosenbaum
  D.C. Bar No. 331728
Bradley K. Ervin
  D.C. Bar No. 982559
COVINGTON & BURLING, LLP

9

One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone:  (202) 662-6000
Fax:  (202) 662-6291
srosenbaum@cov.com

*Attorneys for American Petroleum Institute*

<u>*/s/  James C. Kaste*</u>
James C. Kaste
Deputy Attorney General
Water & Natural Resources Division
109 State Capitol
Cheyenne, WY 82002
(307) 777-6946 phone
(307) 777-3542 fax
james.kaste@wyo.gov

*Counsel for the State of Wyoming*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2022, I caused a true and correct copy of the foregoing to be filed with the Court electronically and served by the Court's CM/ECF System upon all counsel of record.

*/s/ Steven J. Rosenbaum*
Steven J. Rosenbaum