Emily C. Schilling (No. 490483)
Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753 / Fax 202-747-6574
ecschilling@hollandhart.com

Kristina (Tina) R. Van Bockern (CO0100)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8000 / Fax 720-545-9952
trvanbockern@hollandhart.com

Hadassah M. Reimer (WY002)
Holland & Hart LLP
P.O. Box 68
645 South Cache Street, Suite 100
Jackson, WY 83001
Ph. 307-739-9741 / Fax 307-739-9744
hmreimer@hollandhart.com

Kristin A. Nichols (CO0099)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8000 / Fax 720-545-9952
kanichols@hollandhart.com

*Attorneys for Defendant-Intervenor
NAH Utah, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILDEARTH GUARDIANS; and PHYSICIANS FOR SOCIAL RESPONSIBILITY,<br><br>    Plaintiffs.<br><br>vs.<br><br>DEBRA A. HAALAND, Secretary, U.S. Department of the Interior; and U.S. BUREAU OF LAND MANAGEMENT,<br><br>    Defendants,<br><br>and<br><br>STATE OF WYOMING; AMERICAN PETROLEUM INSTITUTE; NAH UTAH, LLC; and ANSCHUTZ EXPLORATION CORPORATION,<br><br>    Defendant-Intervenors. | Case No. 1:21-cv-00175-RC<br><br>**NAH UTAH, LLC'S RESPONSE TO PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL** |

NAH Utah, LLC ("NAH Utah") files this response and objection to the Plaintiffs' March 4, 2022 Motion for Voluntary Dismissal of this case with prejudice in connection with the negotiation and execution of a settlement agreement between Plaintiffs and Federal Defendants (ECF No. 71). Because the settlement agreement fails to provide any indication that the Bureau of Land Management ("BLM") will timely process and issue decisions on Applications for Permits to Drill ("APDs") during remand, NAH Utah requests that, if the Court grants Plaintiffs' motion, the Court make clear that the settlement agreement and dismissal of the case with prejudice does not in any way limit BLM's ability to process and issue decisions on NAH Utah's APDs during the remand period.

## FACTUAL BACKGROUND

I.   **The Settlement Agreement.**

The settlement agreement provides, in part, that BLM will conduct additional analysis under the National Environmental Policy Act ("NEPA") for the leasing decisions subject to this litigation and that, upon completion of BLM's NEPA analysis and related documentation, "BLM will issue one or more decisions." ECF No. 71-1, ¶¶ 1-2. The settlement agreement also requires BLM to provide notice to Plaintiffs' counsel regarding the receipt of any complete APD package during the pendency of the aforementioned NEPA analysis. *See id.* ¶ 3.

While the settlement agreement suggests that BLM retains authority to accept, process, and issue APDs on the leases subject to this litigation while BLM prepares additional NEPA analysis consistent with the settlement agreement (hereinafter referred to as the "remand period"), NAH Utah harbors substantial concern that BLM will decline to do so. Indeed, the settlement agreement does not expressly state that BLM retains complete authority to process and issue decisions on APDs during the remand period. Nor does the settlement agreement

indicate that BLM will, as a practical matter, timely process and issue decisions on APDs during this time.

## II.     NAH Utah's Intervention and Interests.

As this Court recognized in granting NAH Utah's motion to intervene in this case, ECF No. 36, NAH Utah has a substantial interest in the outcome of this litigation as the holder of twenty-four oil and gas leases, which were issued pursuant to the Utah BLM's September 11, 2018 oil and gas lease sale ("September 2018 Lease Sale").  Further, NAH Utah's interests are unique compared to other parties in this litigation because its leases will produce helium, not oil and gas.  ECF No. 23-1 at 1-2 (citing ECF No. 23-2, ¶ 6).  Accordingly, any interpretation or implementation of the settlement agreement that allows BLM to delay processing APDs during the remand period would allow BLM to indefinitely delay NAH Utah's operations and result in longstanding uncertainty and significant economic harm.  ECF No. 23-2, ¶ 11 (describing how substantial delays would impede the recovery of NAH Utah's significant investments).

NAH Utah has legitimate concerns that BLM may utilize the settlement agreement as yet another excuse to substantially delay the development of helium from its leases while BLM reevaluates the climate change impacts of downstream oil and gas combustion emissions that are not associated with NAH Utah's helium development.  Specifically, NAH Utah has four APDs that are currently pending before BLM.  *Id*.  NAH Utah submitted these APDs to the BLM Price Field Office in August of 2019.  After BLM held public scoping from February 4, 2021 to February 19, 2021, NAH Utah hired a consultant to prepare the draft environmental assessment ("EA") for the APDs.  Since that time, completion of the NEPA analysis has been continually delayed.[1]

---

[1] NAH Utah's helium development project has already been delayed once due to the suspension of its leases for the preparation of supplemental NEPA analysis in response to a similar lawsuit

In the fall of 2021, BLM decided that additional environmental analysis of greenhouse gas ("GHG") emissions and the social cost of carbon ("SCC") methodology would be needed, and the schedule for the release of the draft EA was pushed back by several months. NAH Utah understands that the draft EA is substantially complete, was sent to the Utah State Office in December 2021 for internal review, and is otherwise ready to be published for public review and comment. However, on January 28, 2022, BLM informed NAH Utah that it would no longer continue to process NAH Utah's APDs due to ongoing litigation and would instead "wait and see the final settlement terms and then determine how best to proceed with the pending APDs EA." Ex. 1, Email from Mr. Bankert, BLM to Ms. Bowles, NAH Utah (Jan. 28, 2022).

BLM's willingness to delay APDs approvals on leases based merely on their inclusion in this unresolved litigation portends BLM's willingness to continue to stall approvals based solely on their inclusion in the NEPA process on remand.

**ARGUMENT**

Should the Court grant Plaintiffs' Motion for Voluntary Dismissal, NAH Utah requests that this Court make clear that BLM retains full authority under the terms of the settlement agreement to process and issue decisions on NAH Utah's APDs during the remand period, consistent with its statutory obligations under the Mineral Leasing Act ("MLA") and other laws. NAH Utah submits this Response for the following reasons: (1) the basic framework for the settlement agreement, as expressly communicated to NAH Utah and other Defendant-Intervenors, did not contemplate a pause on the issuance of APD approvals, although BLM has

---

filed by the Plaintiffs. Supplemental EA, DOI-BLM-UT-0000-2021-0001-EA, at 1 (Jan. 2021), *available at* https://eplanning.blm.gov/public_projects/2002778/200390662/20032939/250039138/2021-01-14-DOI-BLM-UT-0000-2021-0001-EA%20GHG%20Supplemental%20EA_Final.pdf (last visited Mar. 18, 2022).

already cited this litigation as justification for delaying APD approvals; (2) the processing and issuance of decisions on APDs cannot and should not be delayed when the leasing litigation is resolved without a judicial determination that a NEPA violation occurred; (3) NAH Utah will develop its leases for helium, not oil and gas, and therefore its APDs should be exempted from any suspension or delays because NAH Utah's helium development produces no downstream GHG emissions at the time of consumption; and (4) NAH Utah's EA for its APDs will include the SCC analysis that BLM intends to include in its leasing analysis on remand.

### I.     NAH Utah Is Entitled to Object to the Settlement.

In granting NAH Utah full intervenor status under Rule 24(a) in this case, the Court recognized NAH Utah's significant protectable interest in the outcome of this litigation, which challenges NAH Utah's property rights in twenty-four leases purchased for helium development in the September 2018 Lease Sale. ECF No. 36 at 3. When a court grants intervention, the intervenor becomes a party within the meaning of the Federal Rules of Civil Procedure and is entitled to fully litigate on the merits. *Ameren Servs. Co. v. FERC*, 893 F.3d 786, 791 (D.C. Cir. 2018). Accordingly, NAH Utah has the right to object to any settlement that disposes of the case. *See Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland*, 478 U.S. 501, 529 (1986) ("[P]arties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement."); *see also W. Watersheds Project v. Haaland,* 2022 U.S. App. LEXIS 240, *34-35 (9th Cir. Jan. 5, 2022) (oil and gas leaseholders have "legally protected interest[s] in contract rights with the federal government[,]" including "a substantial due process interest in the outcome of . . . litigation by virtue of its contract with an existing party").

NAH Utah has real property interests in the oil and gas leases acquired during the September 2018 Lease Sale. Any suspension or delay in processing APDs while BLM conducts

additional NEPA analysis for the subject leases would unfairly and unreasonably preclude NAH Utah from realizing a return on its investment during the remand period. NAH Utah's leases are not mere prospects or expectancies but rather give rise to interests in real property that include a right of access and mineral production. *Union Oil Co. of Cal. v. Morton*, 512 F.2d 743, 747 (9th Cir. 1975); 43 C.F.R. § 3101.1-2. The implementation of the settlement agreement in a way that suspends or delays APD approvals will have a substantial negative impact on NAH Utah's ability to fully capitalize on its investments and will fail to adequately protect these property interests.

NAH Utah's leases were initially sold and issued in 2018 and have already been suspended and subjected to additional NEPA analysis once before. *See supra* 2-3, n.1. Nearly three and a half years later, NAH Utah still has not been permitted to exercise its rights to explore for, let alone develop, helium from the leases. Sitting on complete APD packages—which themselves have been subject to separate and more recent NEPA analysis—while BLM undertakes another lengthy NEPA review process is unnecessary, burdensome, and detrimental to NAH Utah's lease rights and its corresponding investments.

For the reasons detailed below, if the Court accepts the Plaintiffs' and Federal Defendants' settlement agreement and dismisses this litigation with prejudice, NAH Utah requests an affirmative finding from this Court that BLM can continue to process and issue decisions on APDs during the remand period consistent with its statutory obligations under the MLA.

**II.   Plaintiffs' Counsel Represented that BLM Could Continue to Process APDs.**

Based on representations from Plaintiffs' counsel, NAH Utah understood that the basic framework of the settlement agreement did not impose any limitations on BLM's ability to issue APDs for the challenged leases during the remand period. Specifically, as represented in NAH

5

Utah's Response to Plaintiffs' Motion to Stay Proceedings, Plaintiffs shared in an August 10, 2021 email that Plaintiffs and Federal Defendants did not contemplate the vacatur or suspension of leases or a pause on the issuance of APDs for the challenged leases in negotiating the settlement agreement.  ECF No. 48 at 1; *see also* Ex. 2, Email from Mr. Daniel Timmons, Counsel for Plaintiffs to Counsel for Defendant-Intervenors in 21-cv-175, 20-cv-56, 16-cv-1724 (Aug. 10, 2021) ("I can say that we are not contemplating the vacatur or suspension of leases, or pausing APD issuance on the challenged leases" (emphasis in original)).  Despite requesting that it be included in future settlement discussions, NAH Utah was not included in such discussions.  *See* ECF No. 49 at 2-3 (opposing that Defendant-Intervenors be allowed to participate in settlement discussions).

Regardless, NAH Utah has made clear that it would vigorously oppose any limitation on BLM's ability to continue to issue APDs, particularly where Plaintiffs have not met their burden on the merits to demonstrate a legal violation with respect to the September 2018 Lease Sale.  And in particular, in responding to Federal Defendants' Motion for Voluntary Remand Without Vacatur, ECF No. 43—which was filed shortly before Plaintiffs' Motion to Stay Proceedings, ECF No. 46—NAH Utah stated that it would oppose any effort by BLM to "use[] the remand as justification for not processing completed APD packages."  ECF No. 55 at 1; *see also id.* (opposing any circumstance in which "BLM does not retain full authority to grant APDs during the remand period").

Notably, the settlement agreement itself contains no express language limiting the ability of BLM to process APDs during the remand and suggests that BLM intends to process APDs during the remand period.  ECF No. 71-1, ¶ 3.  This is consistent with BLM's statutory obligations under the MLA, 30 U.S.C. § 226, and BLM's policy that allows it to process APDs

6

while additional NEPA analysis is prepared for underlying leasing decisions subject to litigation as long as there has not been any "court-ordered vacatur or other action cancelling or terminating the lease." *See* BLM Permanent Instruction Memorandum 2022-001 (Oct. 14, 2021).

Nevertheless, BLM has already cited this pending litigation as justification for indefinitely delaying approval of NAH Utah's APDs (*see supra* at 3), and NAH Utah anticipates that BLM may cite the NEPA process during the remand period as the reason for continued delays. In order to effectuate the basic settlement framework contemplated by Plaintiffs and Federal Defendants and the plain language of the settlement agreement, this Court should provide clarity to the parties by making an express finding that BLM retains full authority to process and issue decisions on APDs for the challenged leases during the remand period.

**III.     The Processing and Issuance of Decisions on APDs Should Not Be Delayed.**

Acknowledging BLM's authority to process and issue decisions on APDs during the remand period is consistent with this Court's prior decisions in similar contexts. In two recent cases, this Court declined to enjoin BLM from issuing APDs after BLM took a voluntary remand to conduct supplemental NEPA analysis for oil and gas leasing decisions. *See WildEarth Guardians v. Bernhardt*, 2019 U.S. Dist. LEXIS 120821, at *7-*9 (D.D.C. July 19, 2019); *see also WildEarth Guardians v. Bernhardt*, 2020 U.S. Dist. LEXIS 197810, at *5 (D.D.C. Oct. 23, 2020). In doing so, this Court reasoned it "cannot properly enjoin leasing activity on the [subject] leases without a briefing on the merits of BLM's environmental analysis for those sites." *WildEarth Guardians*, 2019 U.S. Dist. LEXIS 120821, at *9.

For the same reasons, entering into a settlement agreement with no prohibition on APD issuance and dismissing the case with prejudice—without any briefing, let alone a decision, on the merits—does not pave the way for BLM to delay processing APDs for the challenged leases during the remand period.

### IV. NAH Utah's APDs Should Be Exempt From Any Delays Because Helium Development Does Not Produce Combustion-Related Downstream GHG Emissions.

Plaintiffs' claims in this case largely relate to BLM's alleged failure to adequately account for downstream GHG emissions from fossil fuel combustion. While helium has historically been produced as a byproduct of conventional oil and gas development and is usually less than 3% of the produced reservoir, NAH Utah anticipates that its wells will produce high concentration helium gas with nitrogen as the main byproduct. ECF No. 23-2, ¶ 7. NAH Utah's production and purification of helium from nitrogen-based reservoirs would release minimal amounts of GHG emissions. *Id.* Moreover, while there are minimal GHG emissions that occur from transporting the produced helium, unlike oil and gas hydrocarbon resources, helium is not combusted for consumption and, therefore, there are no downstream GHG emissions at the time of consumption. *Id.* Thus, any delay in processing NAH Utah's APDs during the remand period is illogical because the focus of BLM's supplemental NEPA analysis—combustion-related downstream GHG emissions—is not applicable to helium.

Moreover, BLM should prioritize and expedite NAH Utah's APDs because domestic helium production is vital to the economic and national security of the United States given its use in advanced medical imaging equipment, advanced scientific research, energy and space technology, and defense and semiconductor manufacturing technology. *Id.* ¶ 4. Rising concerns related to both domestic and foreign supplies of helium demonstrate the need to develop domestic sources of helium, including the decline in domestic helium production due to the depletion of federal helium reserves and the recurring global helium shortages that lasted from 2011 through 2013 and 2019 through 2020.[2]

---

[2] Recent and growing potential for global helium shortages is well-documented. *See, e.g.,* Jamie Ashcroft, "Helium in price squeeze as major new supplies fail to materialize," Proactive Investors (Jan. 27, 2022), https://www.proactiveinvestors.com/companies/news/972388/helium-

8

Most recently, an anticipated source of "significant" helium production did not come to fruition after a natural gas processing facility in Russia experienced an explosion and fire that has impacted its ability to produce and transport helium to international markets. *See* Phil Kornbluth, "Latest Amur fire tightens helium supply for 2022," Gasworld (Jan. 17, 2022), https://www.gasworld.com/kornbluth-latest-amur-fire-tightens-helium-supply-for-2022/2022514.article (last visited Mar. 18, 2022).  The recent geopolitical crisis unfolding in Ukraine has introduced fresh uncertainty over the long-term global helium supply. *See* Anthony Wright, "A less unpredictable future for helium?," Gasworld (Mar. 3, 2022), https://www.gasworld.com/a-less-unpredictable-future-for-helium/2022793.article (last visited Mar. 18, 2022).

These helium supply concerns further demonstrate why domestic helium development should not be delayed while BLM conducts supplemental NEPA analysis to consider combustion-related downstream GHG emissions from oil and gas development, which are irrelevant to NAH Utah's helium development proposal.

**V.      NAH Utah's EA for its APDs Will Already Include the SCC Analysis.**

In order to address the minimal amount of GHG emissions associated with NAH Utah's development proposal, the draft EA for NAH Utah's APDs includes a full and thorough discussion of GHG emissions and, based on representations from BLM, will utilize the SCC to assess climate related impacts associated with NAH Utah's helium development.  This analysis

---

in-price-squeeze-as-major-new-supplies-fail-to-materialise-972388.html (last visited Mar. 18, 2022); Phil Kornbluth, "Helium markets now experiencing 'Helium Shortage 4.0'," Gasworld (Feb. 8, 2022), https://www.gasworld.com/helium-markets-now-experiencing-helium-shortage-40/2022650.article (last visited Mar. 18, 2022); "Helium Supply Shortage Threatens U.S. Semiconductors & Medical Imaging," Compressed Gas Association, (Feb. 24, 2022), https://www.cganet.com/helium-shortage-threatens-us-semiconductors-and-medical-imaging/ (last visited Mar. 18, 2022).

includes GHG emissions associated with construction equipment used in exploration and development, and the subsequent transportation of helium to market. ECF No. 23-2, ¶ 7. Thus, any attempt by BLM to delay of the issuance of APDs would be unjustified where BLM has prepared and nearly completed a detailed analysis of climate change impacts specifically related to NAH Utah's helium proposal.

## CONCLUSION

In sum, NAH Utah was not consulted by the Plaintiffs or Federal Defendants during negotiation of the settlement agreement. Had NAH Utah been asked, it would have requested that the settlement agreement provide an affirmative acknowledgement of BLM's retained discretion to both process and grant APDs on leases during the remand period. While the basic framework of the settlement agreement appears to contemplate submission of APDs, it does not address BLM's authority to process and approve them. Here, processing NAH Utah's APDs during the remand period is consistent with BLM's statutory obligations and directly applicable BLM policy.

Moreover, any attempt by BLM to delay processing NAH Utah's APDs is not warranted because its leases will be developed for helium, as opposed to oil and gas, and therefore, the supplemental GHG-related analysis prepared for the leasing decisions in this litigation will have little relevance to NAH Utah's helium development proposal.

NAH Utah is concerned that absent a finding of this Court that BLM retains authority to issue APDs during the remand period, the settlement agreement will be used as an excuse for BLM to impede or delay processing APDs for helium development. Should the Court grant Plaintiffs' Motion for Voluntary Remand, NAH Utah requests that this Court make clear that the settlement agreement and dismissal of the case with prejudice does not in any way limit BLM's

ability to process and issue decisions on NAH Utah's APDs during the remand period, consistent with its statutory obligations.

Respectfully submitted this 18th day of March, 2022.

*/s/ Hadassah M. Reimer*
Hadassah M. Reimer (WY002)
Holland & Hart LLP
25 South Willow Street, Suite 200
Jackson, WY 83001
Ph. 307-739-9741 / Fax 307-739-9744
hmreimer@hollandhart.com

Emily C. Schilling (No. 490483)
Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753 / Fax 202-747-6574
ecschilling@hollandhart.com

Kristina (Tina) R. Van Bockern (CO0100)
Kristin A. Nichols (CO0099)
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8000 / Fax 720-545-9952
trvanbockern@hollandhart.com
kanichols@hollandhart.com

*Attorneys for Defendant-Intervenor NAH Utah, LLC*

## CERTIFICATE OF SERVICE

      I certify that on March 18, 2022, I filed this document using the Court's electronic case-filing system, which will serve documents on all counsel of record.

*/s/ Hadassah M. Reimer*

18366961_v3