## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILDEARTH GUARDIANS, and<br>PHYSICIANS FOR SOCIAL RESPONSIBILITY | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:21-cv-0175-RC<br>The Honorable Rudolph Contreras |
| DEBRA HAALAND, *et al.*, | ) ) | |
| Federal Defendants, | ) ) | |
| and | ) ) | |
| AMERICAN PETROLEUM INSTITUTE, *et al.*, | ) ) | |
| Defendant-Intervenors. | ) ) | |

### PLAINTIFFS' REPLY TO INTERVENOR-DEFENDANTS' OPPOSITIONS TO MOTION FOR VOLUNTARY DISMISSAL

On March 4, 2022, Plaintiffs WildEarth Guardians and Physicians for Social Responsibility moved this Court for an order voluntarily dismissing this action with prejudice, pursuant to Fed. R. Civ. P. 41(a)(2). ECF No. 71. Plaintiffs and Federal Defendants have reached a Stipulated Settlement Agreement, whereby Federal Defendants have committed to conducting "additional NEPA analysis for the two leasing decisions challenged in Plaintiffs' Supplemental Complaint, consistent with the Court's prior decisions in *WildEarth Guardians v. Haaland*, 16-cv-1724 (D.D.C.)," and to posting notice online regarding complete Applications for Permits to Drill ("APDs") on the leases at issue in this case. *See* Stipulated Settlement Agreement, ECF No. 71-1 ¶¶ 1, 3. In accordance with the terms of the Stipulated Settlement Agreement, Plaintiffs have sought dismissal of this litigation with prejudice.

Relying on several unsupported assumptions, Intervenors American Petroleum Institute and State of Wyoming (collectively, "API") oppose voluntary dismissal of the case, instead asking the Court to first resolve API's motion to dismiss on statute of limitations grounds. In other words, API takes exception of the vehicle for dismissal, not that dismissal of this case is appropriate. This position is incongruous for several reasons. First, API's objections are based on an erroneous assumption that the Mineral Leasing Act's 90-day statute of limitations necessarily applies to the NEPA claims at issue in this case, an assertion that no court has ever upheld. *See* ECF No. 41 at 13 (and cases cited). Second, API wrongly assumes that this Court's pre-approval is needed before BLM can undertake additional NEPA analysis—a decision the agency made based on intervening events, including two separate merits decisions from this Court, since these challenged leases were originally issued. Finally, because BLM has independent authority to conduct additional NEPA analysis irrespective of its commitments in the Stipulated Settlement Agreement, Intervenors are not prejudiced by the settlement terms or the requested voluntary dismissal.

In turn, Intervenors Anschutz Exploration Corporation (AEC) and NAH Utah, LLC (NAH Utah) raise purely speculative concerns regarding the ultimate outcome of additional environmental analysis, but point to no legal prejudice from settlement or dismissal of this case. Because Plaintiffs' Motion for Voluntary Dismissal was sought in good faith and no party would suffer legal prejudice from dismissal, the Court should grant Plaintiffs' motion.

## **ARGUMENT**

### I.    **Plaintiffs' Motion for Dismissal is not a Motion for Voluntary Remand**

Federal Rule of Civil Procedure 41(a)(2) states that, except in circumstances not present here, "an action may be dismissed at the plaintiff's request only by court order, on terms that the

court considers proper." "To determine whether dismissal is appropriate, a court looks to (1) whether the motion 'was sought in good faith' and (2) whether the defendant 'would suffer legal prejudice from a dismissal at this stage in the litigation.'" *N.S. by & through S.S. v. D.C.*, 272 F. Supp. 3d 192, 196 (D.D.C. 2017) (quoting *Indep. Fed. Sav. Bank v. Bender*, 230 F.R.D. 11, 13 (D.D.C. 2005)). "Because dismissal of claims against a defendant rarely prejudices that party, the grant of a voluntary dismissal is virtually automatic." *Blue v. D.C. Pub. Sch.*, 764 F.3d 11, 19 (D.C. Cir. 2014).

Intervenors API and AEC attempt to reframe Plaintiffs' Motion for Voluntary Dismissal as a backdoor request for voluntary remand, but offer no on-point authority for applying the voluntary remand standard to the Motion before the Court. API Br. at 4 (ECF No. 76); AEC Br. at 6 (ECF No. 78). In support, API relies solely on a selective quotation from *PGBA, LLC v. United States*, 389 F.3d 1219 (Fed. Cir. 2004), but ignores that *PGBA, LLC* involved the unrelated issue—inapplicable here—of whether the equitable factors for injunctive relief needed to be considered where the requested relief was framed as declaratory relief. API Br. at 4 (quoting *PGBA, LLC,* 389 F.3d at 1228). *PGBA, LLC* says nothing about the applicable standard for reviewing Plaintiffs' Motion for Voluntary Dismissal at issue here.[1] Federal Defendants' previously-filed Motion for Voluntary Remand remains pending before the Court, and Intervenors have failed to show that the two motions should be treated identically.

Nonetheless, under either of the distinct standards for granting a motion for voluntary dismissal or one for voluntary remand, Intervenors have still failed to show that they will be prejudiced – legally or otherwise – and so their objections to Plaintiffs' Motion lack merit. In

---

[1] AEC offers no additional support for treating Plaintiffs' Motion for Voluntary Dismissal as a motion for voluntary remand.

fact, Intervenor API has previously asked the Court to dismiss this case, ECF No. 28, plainly demonstrating that dismissal would not cause prejudice. In truth, Intervenors do not object to *dismissal* of the case, merely to BLM's commitment to conducting additional NEPA analysis on the challenged leases in accordance with this Court's prior merits decisions in the related case, No. 16-cv-1724. Intervenors, however, would not be prejudiced by voluntary dismissal, or by BLM undertaking additional environmental review in accordance with this Court's prior decisions.

**II.    Plaintiffs' Motion for Dismissal is Sought in Good Faith**

Public policy favors settlement of disputes. *U.S. v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). This policy encouraging settlement has "particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). In light of the negotiated settlement agreement underlying Plaintiffs' Motion for Voluntary Dismissal, Plaintiffs have acted in good faith in seeking voluntary dismissal.

AEC complains that it was not privy to Plaintiffs' and Federal Defendants' settlement negotiations, claiming that this exclusion "defied settled federal law providing that all parties to a lawsuit should be privy to the settlement process." AEC Br. at 7. But AEC provides no support for this conclusory assertion, which is contrary to well-accepted practice during settlement negotiations. While it is true that "parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement," *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986), AEC and the other

Intervenors have no claims in this litigation and the Stipulated Settlement Agreement imposes no duties or obligations or AEC or any other third party. AEC's reliance on *United States v. Carpenter*, 526 F.3d 1237, 1241 (9th Cir. 2008) is similarly misplaced. There, the Ninth Circuit vacated a settlement where intervenors objected that they were not allowed to present evidence or participate as parties in hearings on the merits of the settlement. *Id*. But while intervenors must be allowed to participate in "settlement review proceedings," *id*., there is no equivalent obligation that intervenors be permitted to participate through all phases of settlement negotiations prior to an agreement being reached.

AEC further claims that Intervenors were not "provided with adequate notice of the proposed settlement and an opportunity to voice their positions on the settlement terms." AEC Br. at 4. But Intervenors were provided with a draft of the settlement framework on December 17, 2021, and proposed settlement language on January 6, 2022. ECF No. 68 at 2, 3. After written concerns were raised to Federal Defendants on February 4, 2022 by one Intervenor, Federal Defendants evaluated those concerns and made minor revisions to the proposed settlement agreement in light of those concerns. ECF No. 69, at 1-2. AEC has now raised its concerns to this Court regarding the Stipulated Settlement Agreement through its Opposition to Plaintiffs' Motion for Voluntary Dismissal. AEC Br. (ECF No. 78). AEC states that "[n]either the Intervenor–Defendants, the Court, nor the public has been made aware of Plaintiffs' and Federal Defendants' intent with respect to the voluntary remand," AEC Br. at 4, but the terms of the Stipulated Settlement Agreement speak for themselves. ECF No. 71-1. AEC further speculates regarding some unstated, nefarious plot behind the Stipulated Settlement Agreement, claiming that "[t]he settling parties are thus concealing from the Court, the Intervenor–Defendants, and the public the true nature of their plans on remand." AEC Br. at 4. To the

contrary, the Stipulated Settlement Agreement expressly provides that it "contains all of the terms of agreement between the Parties concerning the Plaintiffs' Complaint, and is intended to be the final and sole agreement between the Parties with respect thereto. The Parties agree that any prior or contemporaneous representations or understanding not explicitly contained in this written Agreement, whether written or oral, are of no further legal or equitable force or effect." ECF No. 71-1 ¶11. AEC's paranoid attempt to cast a straightforward settlement agreement as a collusive plot against the oil and gas industry is not well-taken and fails to demonstrate that Plaintiffs have not sought voluntary dismissal in good faith.

### III.    No Party Would be Prejudiced by Voluntary Dismissal

Voluntary dismissal is further appropriate because the Stipulated Settlement Agreement imposes no legal obligations on Intervenors, and dismissal with prejudice will not cause any legal prejudice to Intervenors. Intervenors, in fact, do not argue that voluntary *dismissal* would cause prejudice, but only object to *remand* to the agency for additional NEPA. API Br. at 7; AEC Br. at 3–5. But neither voluntary dismissal nor remand for additional NEPA would prejudice Intervenors, whose lease rights are expressly delimited by BLM's compliance with its own legal obligations, including those under NEPA. *See* 43 C.F.R. §§ 3101.1-2, 3101.1-3, 3108.3(d).

API's arguments against voluntary dismissal rest on the fundamental assumption that the Mineral Leasing Act's 90-day statute of limitations applies to the NEPA claims at issue in this case. But, as fully briefed to this Court, no federal court has previously held NEPA claims subject to the Mineral Leasing Act's 90-day statute of limitations. *See* ECF No. 41 at 13 (and cases cited). Accordingly, API's claims of prejudice are wholly rooted in an unsupported legal theory.

Moreover, even if API were correct that the Mineral Leasing Act's statute of limitations should apply in this NEPA case, voluntary dismissal would still not cause Intervenors prejudice. Assuming *arguendo* that the Court were to instead grant API's motion to dismiss on statute of limitations grounds, such a decision would still not affect BLM's obligation to comply with its separate obligations under NEPA. Notably, Section 226-2 of the Mineral Leasing Act only bars untimely legal "actions" contesting certain Secretarial decisions related to oil and gas leasing, 30 U.S.C. § 226-2, but does not preclude BLM from conducting supplemental environmental analyses under NEPA. Instead, under 40 C.F.R. § 1502.9(d)(2), BLM is permitted to undertake supplemental NEPA review at any time "when the agency determines that the purposes of [NEPA] will be furthered by doing so." Federal Defendants have, in fact, sought voluntary remand in this case to conduct such additional NEPA review, explaining that "Federal Defendants have determined that a remand is appropriate so they may further analyze the impacts of the challenged leasing decisions" in light of the Court's related *Bernhardt* and *Zinke* decisions. ECF No. 43, at 5 (citing *WildEarth Guardians v. Bernhardt*, 502 F. Supp. 3d 237, 259 (D.D.C. 2020); *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 83 (D.D.C. 2019).

API also continues to press the argument that a confession of error is required for voluntary remand, *see* API Br. at 5 n.1, contrary to D.C. Circuit law.[2] Nor, of course, is this a request for voluntary remand. More importantly, however, the *American Waterways* cases provide no support for API's opposition because—unlike here—there were no intervening developments in that case that preceded the agency's original remand request and the subsequent

---

[2] The D.C. Circuit has clearly established law that an "agency may request a remand (without confessing error) in order to reconsider its previous position." *Util. Solid Waste Activities Grp. v. Env't Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018) (per curiam) (quoting *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)), *judgement entered,* No. 15-1219, 2018 WL 4158384 (D.C. Cir. Aug. 21, 2018) (per curiam).

Stipulated Settlement Agreement. *Am. Waterways Operators v. Wheeler* (*American Waterways I*), 427 F. Supp. 3d 95, 98 (D.D.C. 2019) ("Nor does EPA identify any intervening legal or factual developments that support remand."). When there are intervening events, voluntary remands "comport[] with the general principle that an agency should be afforded the first word on how an intervening change in law affects an agency decision pending review." *Nat'l Fuel Gas Supply Corp. v. F.E.R.C.*, 899 F.2d 1244, 1249–50 (D.C. Cir. 1990) (per curiam). Indeed, as Federal Defendants pointed out in briefing their Motion for Voluntary Remand, "*American Waterways I* firmly supports Federal Defendants' remand request, observing that: 'Courts commonly grant such requests when the motion is made in response to intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation….In those cases, [a] remand is generally required if the intervening event may affect the validity of the agency action.'" ECF No. 59, at 2 (quoting *American Waterways I*, 427 F. Supp. 3d at 97).

Further, even absent a grant of voluntary remand or dismissal by this Court, BLM has the discretion to conduct supplemental NEPA analysis given its expressed concerns that "[t]he analyses supporting the challenged leasing decisions are similar in some respects to those the Court considered in *Bernhardt* and *Zinke*." ECF No. 43, at 5. *See also* 40 C.F.R. § 1502.9(c) ("Agencies [m]ay also prepare [NEPA] supplements when the agency determines that the purposes of the Act will be furthered by doing so."); 40 C.F.R. § 1501.5 ("An agency may prepare an environmental assessment on any action in order to assist agency planning and decision making."). Further, "the initial decision whether [to supplement under NEPA] should be made by the agency, not by a reviewing court." *TOMAC v. Norton*, No. CIV.A.01-0398 JR, 2005 WL 2375171, at *3 (D.D.C. Mar. 24, 2005) (quoting *Friends of the River v. FERC,* 720 F.2d 93,

109 (D.C.Cir.1983)). Because BLM has the discretion to conduct additional NEPA on the challenged leases, irrespective of any settlement agreement or dismissal of the litigation, Intervenors have suffered no prejudice from BLM's commitment to do so through the Stipulated Settlement Agreement or by voluntary dismissal of this case.

API's claims of possible prejudice are rooted in its desire for "certainty and comfort" regarding the validity of its members' lease rights. API Br. at 9. But API offer no support for its novel theory that the Mineral Leasing Act's statute of limitations not only bars untimely legal challenges to leasing decisions, but also forecloses BLM from reassessing its own environmental analyses. API Br. at 8. Such an interpretation is plainly inconsistent with BLM's rights and obligations under NEPA, as well as the express limitations of lease rights under the Mineral Leasing Act.

While Intervenors may prefer to have the Court dismiss this case on statute of limitations grounds, a pending motion to dismiss does not limit the Court's discretion to grant voluntary dismissal. As noted in Plaintiffs' Motion, the D.C. Circuit has explained, "los[ing] an opportunity for a favorable final disposition of the case ... is not important as long as [defendant] suffers no legal prejudice from dismissal." *Kellmer v. Raines*, 674 F.3d 848, 851 (D.C. Cir. 2012) (quoting *Conafay v. Wyeth Labs,* 841 F.2d 417, 420 (D.C. Cir. 1988)). But in their attempt to reframe Plaintiffs' Motion for Voluntary Dismissal as a backdoor motion for voluntary remand, API and AEC completely fail to engage with this fact or controlling case law. Because Plaintiffs are seeking dismissal with prejudice – the exact same remedy requested in API's motion to dismiss – Intervenors cannot show legal prejudice from voluntary dismissal.

If upon completion of additional NEPA analyses, BLM were to ultimately determine that the challenged leases needed to be vacated or modified with additional stipulations, any affected

Intervenors would have an opportunity, at that time, to challenge such a decision. But Intervenors cannot rely on such a speculative possibility to preempt BLM from taking a hard look at the environmental consequences of the agency's prior leasing decisions, particularly in light of the Court's earlier decisions in the related case, No. 16-cv-1724, which plainly call into question the validity of the environmental analyses underlying the leasing decisions at issue. Thus, AEC's expressed concerns that BLM may attempt to unilaterally change its lease terms based on the outcome of additional NEPA analysis are wholly speculative and unripe. AEC Br. at 6-7. If, upon conclusion of additional NEPA analysis, BLM were to take action that affected AEC's lease rights, AEC would have every opportunity to challenge such a decision. But such premature speculation is not legal prejudice.

Nor does this Court need to entertain NAH Utah's supposition that BLM may indefinitely delay future processing of APDs pending completion of additional NEPA analysis, despite acknowledging that "the settlement agreement suggests that BLM retains authority to accept, process, and issue APDs on the leases subject to this litigation while BLM prepares additional NEPA analysis consistent with the settlement agreement." NAH Utah Br. at 1 (ECF No. 77). Notably, NAH Utah fails to identify any legal requirement for BLM to approve APDs in any particular timeframe – because no such requirement exists[3] – and the Court cannot simply presume BLM will prejudicially delay APD processing pending completion of additional NEPA analysis. Given BLM's legitimate questions regarding the validity of the NEPA analyses

---

[3] 43 C.F.R. § 3162.3-1(h) requires BLM to take action on an APD application within 5 days after conclusion of a 30-day notice period for APDs on Federal lands, but such allowable action specifically includes "[a]vis[ing] the applicant, either in writing or orally with subsequent written confirmation, of the reasons why final action will be delayed along with the date such final action can be expected").

underlying NAH Utah's leases – questions engendered by this Court's related *Bernhardt* and *Zinke* decisions – it is understandable that the company has experienced some delays in BLM's processing of pending APDs. NAH Utah Br. at 1. But the Stipulated Settlement Agreement does not bar BLM from approving APDs, and NAH Utah's concerns that BLM "may" delay processing APDs for the challenged leases is pure speculation and without legal merit. NAH Utah Br. at 2.

Because BLM has the independent authority to conduct supplemental NEPA and reassess its prior leasing decisions, even absent voluntary dismissal or remand, Intervenors are not prejudiced by Plaintiffs' Motion for Voluntary Dismissal or the Stipulated Settlement Agreement.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Voluntary Dismissal, ECF No. 71, and enter an order retaining jurisdiction solely for the purposes of resolving any motion for attorneys' fees and costs filed that may be timely filed by Plaintiffs in accordance with the Equal Access to Justice Act.

Respectfully submitted on this 25th day of March 2022.

<u>*/s/ Daniel L. Timmons*</u>
Daniel Timmons
WildEarth Guardians
301 N. Guadalupe Street, Suite 201
Santa Fe, NM  87501
Tel.: 505-570-7014
E-mail: dtimmons@wildearthguardians.org

Kyle Tisdel
Western Environmental Law Center
208 Paseo Del Pueblo Sur, No. 602
Taos, NM  87571

Tel.: (575) 613-4197
E-mail: tisdel@westernlaw.org


Samantha Ruscavage-Barz
301 N. Guadalupe St. Suite 201
Santa Fe, NM 87501
Tel.: (505) 401-4180
Fax: (505) 213-1895
E-mail: sruscavagebarz@wildearthguardians.org


*Attorneys for Plaintiffs*

---

### CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this case.


<u>*/s/ Daniel L. Timmons*</u>
Daniel L. Timmons