**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILDEARTH GUARDIANS, *et. al*,      :
                                    :
      Plaintiffs,                   :      Civil Action No.:     21-175 (RC)
                                    :
      v.                            :      Re Document Nos.:     28, 43, 71, 81
                                    :
DEBRA HAALAND, Secretary of the     :
U.S. Department of the Interior, *et. al*,   :
                                    :
      Defendants,                   :
                                    :
      and                           :
                                    :
AMERICAN PETROLEUM INSTITUTE,       :
*et. al*,                           :
                                    :
      Intervenor-Defendants.        :

## MEMORANDUM OPINION

GRANTING PLAINTIFF'S MOTION TO VOLUNTARILY DISMISS; DENYING AS MOOT AMERICAN
PETROLEUM INSTITUTE'S MOTION TO DISMISS; DENYING AS MOOT FEDERAL DEFENDANTS'
MOTION TO DISMISS; DENYING AS MOOT FEDERAL DEFENDANT'S MOTION TO REMAND

## I. INTRODUCTION

Now pending before the Court is Plaintiffs' motion for a voluntary dismissal by court

order pursuant to Federal Rule of Civil Procedure 41(a)(2).  Mot. Vol. Dismissal ("Vol.

Dismissal Mot."), ECF No. 227.  The Plaintiff conservation groups and the Federal Defendants

have reached a settlement agreement to resolve three related cases pending before the Court,

including this one, but some of the Intervenor-Defendants in each action oppose the voluntary

dismissal.[1]  *See id.*; Intervenor-Defs. Am. Petroleum Inst.'s, State of Wyoming's, & State of

---

[1] The Court addresses all the arguments in the related and overlapping motions for the
three cases in this single opinion.  The ECF docket numbers cited herein correspond to the
original case, 16-cv-1724, unless otherwise noted.

Utah's Opp'n to Mot. Vol. Dismissal ("Vol. Dismissal Opp'n"), ECF No. 229; Pls.' Reply to

Intervenor-Defs.' Opp'n Mot. Vol. Dismissal ("Vol. Dismissal Reply"), ECF No. 231.  The

Federal Defendants, while supporting Plaintiffs' motion for voluntary dismissal, have filed an

additional motion to dismiss arguing that the case is moot in light of the settlement.  Fed. Defs.'

Mot. Dismiss for Lack of Subject Matter Juris. Under Fed. R. Civ. Pro. 12(h)(3) ("Fed. Defs.'

MTD"), ECF No. 232.  Upon consideration of the parties' arguments, the Court concludes that

voluntary dismissal is proper, dismisses this action over Intervenors' objections, and denies the

remaining motions as moot.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Two non-profit conservation organizations, WildEarth Guardians and Physicians for

Social Responsibility, brought the first of these three cases in 2016 ("*WildEarth 2016*"), alleging

that the United States Bureau of Land Management ("BLM") violated the National

Environmental Policy Act ("NEPA") by not sufficiently considering climate change when

authorizing oil and gas leasing on federal land in three states: Wyoming, Utah, and Colorado.

Compl. ¶ 10, ECF No. 1.  Those states and three industry organizations with interests in the

leases, the Western Energy Alliance, the Petroleum Association of Wyoming, and the American

Petroleum Institute ("API") intervened as defendants.  *See* Mem. & Order, ECF No. 19 (granting

Western Energy Alliance, Petroleum Association of Wyoming, and American Petroleum

Institute's motions to intervene); Mem. & Order, ECF No. 46 (granting Wyoming, Utah, and

Colorado's motions to intervene).[2]

Early in the action, the Court entered a scheduling order dividing the briefing into three

parts that would separately consider the leasing decisions made in each of the three states.

---

[2] Colorado has since been granted leave to voluntarily withdraw.  *See* Order Granting
State of Colorado's Motion to Withdraw, ECF No. 105.

Scheduling Order, Nov. 28, 2016, ECF No. 24.  The Court considered the merits relating to the Wyoming lease sales first, determining that "BLM did not adequately quantify the climate change impacts of oil and gas leasing" and remanding the Environmental Assessments (EAs) and Findings of No Significant Impact (FONSIs) for the Wyoming leasing decisions to the agency without vacating the leases.  *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 51 (D.D.C. 2019).  BLM supplemented those analyses on remand and reaffirmed the original Wyoming leasing decisions.  Fed. Defs.' 2d Notice of Compliance, ECF No. 106.  While supplementing the analysis for the Wyoming leases, BLM conducted an additional reassessment of the NEPA analysis underlying the Colorado and Utah leases and moved for voluntary remand of those leasing decisions as well, which the Court granted.  Mot. to Remand, ECF No. 107; Min. Order of May 29, 2019.  BLM completed new EAs and FONSIs for the Utah and Colorado leases, ultimately reaffirming the leasing decisions for both of those states as well.  *See* Notice of Completion, ECF No. 171.

Meanwhile, Plaintiffs supplemented their complaint to challenge the Wyoming EAs and FONSI that BLM had prepared on remand.  Am. & Suppl. Compl., ECF No. 126.  The Court determined that the supplemented analysis still failed to satisfy the requirements of NEPA and remanded to the agency yet again.  *WildEarth Guardians v. Bernhardt*, 502 F. Supp. 3d 237, 259 (D.D.C. 2020), *appeal dismissed sub nom. WildEarth Guardians v. Haaland*, No. 21-5006, 2021 WL 3176109 (D.C. Cir. Apr. 28, 2021).  Plaintiffs then supplemented their complaint a third time, this time challenging the additional analysis that had been undertaken on the Colorado and Utah leases during BLM's voluntary remand.  Suppl. Compl., ECF No. 192.

As the first case—*WildEarth 2016*—has been progressing, two other related cases have also been filed before this Court by the same Plaintiff organizations alleging that BLM failed to

adequately consider the effects of climate change as required by NEPA for different sets of leasing decisions. *WildEarth 2020* challenged BLM's approval of a group of oil and gas leases in Colorado, New Mexico, Montana, Utah, and Wyoming, *see* Compl. ¶¶ 1–2, *WildEarth Guardians v. Haaland*, *("WildEarth 2020")*, No. 20-cv-56, ECF No. 1, and Wyoming, API, and Western Energy Alliance were all granted leave to intervene as defendants in that action, *see id.*, ECF Nos. 25, 27, 35. The Court granted the Federal Defendants' request to remand most, but not all, of the leasing decisions in that case to the agency and set a briefing schedule for the remaining leases. Order Granting Fed. Defs.' Mot. Vol. Remand without Vacatur, *WildEarth 2020*, ECF No. 46; *id.*, Min. Order of July 6, 2021. Next, *WildEarth 2021* challenged another, more recent, group of leases in Colorado, New Mexico, Utah, and Wyoming. *See* Compl. ¶ 1, *WildEarth Guardians v. Haaland*, No. 21-cv-175 ("*WildEarth 2021*"), ECF No. 1. Wyoming, API, NAH Utah, and Anschutz Exploration Corporation intervened as defendants in that action. *Id.* at ECF Nos. 21, 22, 36, 37.

All of which leads to a quartet of similar, and in some cases identical, pending motions in these three cases. In all three cases, Intervenor-Defendant API moved to dismiss on statute of limitations grounds. *See* Intervenor-Def. Am. Petroleum Inst.'s Mem. Supp. Mot. Dismiss ("API Mot."), ECF No. 201-1; Intervenor-Def. Am. Petroleum Inst.'s Mem. Supp. Mot. Dismiss in Part, *WildEarth 2020* at ECF No. 55-1; Intervenor-Def. Am. Petroleum Inst.'s Mem. Supp. Mot. Dismiss in Part, or, in Alt., for Partial Summ. J. ("API Partial Mot."), *WildEarth 2021*, ECF No. 28-1.[3] Also in all three cases, the Federal Defendants moved to voluntarily remand for further consideration on the leasing decisions that had not yet been addressed. *See* Fed. Defs.' 2d Mot.

---

[3] API's motion in *WildEarth 2021* raised the additional arguments of *res judicata* with respect to two of the challenged lease sales in that action and laches with respect to 17 of the leasing decisions challenged in that action.

for Vol. Remand without Vacatur & Mem. in Supp. ("Fed. Defs.' Remand Mot."), ECF No. 200;

Fed. Defs.' 2d Mot. for Vol. Remand without Vacatur & Mem. in Supp., *WildEarth 2020*, ECF

No. 54; Fed. Defs.' Mot. for Vol. Remand without Vacatur & Mem. in Supp., *WildEarth 2021,*

ECF No. 43.

      In each case, API and other Intervenor-Defendants opposed the Federal Defendants'

motions for voluntary remand, asking the Court to instead rule on the merits of API's pending

motion to dismiss, among other issues.  *See* Resp. of Intervenor-Defs. Am. Petroleum Inst., W.

Energy All., & State of Utah to Defs.' Mot. Vol. Remand, ECF No. 205; *see also* Intervenor-Def.

Wyoming's Opp'n to Fed. Defs.' Mot. Remand, *WildEarth 2021*, ECF No. 51; Anschutz Expl.

Corp.'s Mem. P. & A. in Opp'n to Fed. Defs.' Mot. Remand, *WildEarth 2021*, ECF No. 53;

NAH Utah, LLC's Opp'n to BLM's Mot. Remand, *WildEarth 2021*, ECF No. 55.  In contrast,

Plaintiffs did not oppose the voluntary remand and instead requested additional time to negotiate

a final resolution of all three cases through settlement.  *See* Pls.' Resp. BLM's Mot. Vol.

Remand without Vacatur, ECF No. 212.

      Those settlement negotiations continued over the coming months and eventually bore

fruit.  The Federal Defendants and Plaintiffs reached an agreement to settle all three related cases

pending before this Court, and Plaintiffs moved for voluntary dismissal with prejudice in

accordance with that agreement.  *See* Vol. Dismissal Mot.; Mot. Vol. Dismissal, *WildEarth 2020*,

ECF No. 79; Mot. Vol. Dismissal, *WildEarth 2021*, ECF No. 71.  Intervenor-Defendants[4] API,

Wyoming, Utah, NAH Utah, and Anschutz opposed Plaintiffs' motion for voluntary dismissal,

---

[4] Western Energy Alliance took no position on the motion, and the Petroleum Association of Wyoming did not provide a position or file a response.  *See* Vol. Dismissal Mot. at 2; Vol. Dismissal Opp'n.  In the interest of brevity, references to the "Intervenor Defendants" or "Intervenors" in this opinion refer only to those Intervenor-Defendants who have opposed the motion at issue unless otherwise noted.

reiterating their desire for the Court to rule on the statute of limitations issue first, among other

reasons.  *See* Vol. Dismissal Opp'n; NAH Utah, LLC's Resp. to Pls.' Mot. Vol. Dismissal

("NAH Utah Vol. Dismissal Opp'n"), *WildEarth 2021*, ECF No. 77; Intervenor-Def. Anschutz

Exploration Corp.'s Opp'n Pls.' Mot. Vol. Dismissal ("Anschutz Vol. Dismissal Opp'n"),

*WildEarth 2021*, ECF No. 78.  The Federal Defendants then filed an additional motion to dismiss

for lack of subject matter jurisdiction, arguing that the voluntary settlement renders the entire

case moot.  Fed. Defs.' MTD; *WildEarth 2020*, ECF No. 84; *WildEarth 2021*, ECF No. 81.  The

Intervenor-Defendants opposed that motion in all three cases.  Intervenor-Defs.' Opp'n Mot.

Dismiss, ECF No. 233; Intervenor-Defs.' Opp'n Mot. Dismiss, *WildEarth 2020*, ECF No. 85;

Intervenor-Defs.' Opp'n Mot. Dismiss, *WildEarth 2021*, ECF No. 82.  For the following reasons,

the Court will grant Plaintiffs' motion for voluntary dismissal over Intervenors' objections and

will deny the remaining motions as moot.

## III.  ANALYSIS

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

Beginning with the most recent of the four motions, the Federal Defendants argue that

because they and the Plaintiffs have reached a voluntary settlement and the Intervenors present

no claims of their own, there is no longer a live dispute and the Court should dismiss this action

for lack of subject matter jurisdiction.  Fed. Defs.' MTD at 1.  The Federal Defendants only

describe how Intervenor's pending motions are moot in light of the settlement, but as relief ask

that the Court dismiss the entire action for lack of subject matter jurisdiction.  *See id.* at 4

("Because the Court's lack of subject matter jurisdiction presents a threshold defect to further

consideration of Intervenor-Defendants partial dismissal motions under Rule 12(b)(6), the Court

'must dismiss the action[s]' for lack of subject matter jurisdiction under Rule 12(h)(3).").  The

Court does not believe that the settlement divests it of subject matter jurisdiction over the entire

action, which would also mean that the Court lacks jurisdiction to grant the voluntary dismissal.

It is true "that parties' voluntary settlement of their *entire* dispute renders a case moot."

*Lopez v. NLRB*, 655 F. App'x 859, 861 (D.C. Cir. 2016) (emphasis added).  But the cases cited

by the Federal Defendants do not support the broad proposition that the settlement between

fewer than all parties automatically moots the entire action, as opposed to just some pending

motions.  *See Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478

U.S. 501, 529 (1986) (holding that "parties who choose to resolve litigation through settlement

may not dispose of the claims of a third party [or] impose duties or obligations on a third party"

but that an intervenor "does not have power to block the decree merely by withholding its

consent"); *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 438 (D.C. Cir. 2018)

(remanding a set of provisions to the agency over Intervenors' objections because those

particular provisions were "unchallenged on their merits; accordingly, no party will suffer

prejudice from remand without vacatur" and "any opinion . . . regarding these provisions would

be wholly advisory"); *Lopez*, 655 F. App'x at 861 (dismissing the appeal of a denial of

intervention as moot because the underlying dispute had been settled).

While "the general rule [is] that settlement moots a controversy," "[o]ne exception

involves circumstances 'in which one issue in a case has become moot, but the case as a whole

remains alive because other issues have not become moot.'"  *Aulenback, Inc. v. Fed. Highway

Admin.*, 103 F.3d 156, 163 (D.C. Cir. 1997) (quoting *ITT Rayonier Inc. v. United States*, 651

F.2d 343, 345 (5th Cir.1981)); *see also Powell v. McCormack*, 395 U.S. 486, 497 (1969)

("Where one of the several issues presented becomes moot, the remaining live issues supply the

constitutional requirement of a case or controversy.").  Here, the parties ask that the Court retain

jurisdiction for the limited purpose of resolving any remaining fee petitions, *see* Stipulated Settlement Agreement ("Settlement Agmt.") ¶ 4, ECF No. 227-1, meaning that one dispute remains live even between the settling parties.  And although Federal Defendants' Reply suggests that granting the motion for voluntary dismissal with prejudice would be the proper relief, *see* Fed. Defs.' Reply Supp. Mot. Dismiss, ECF No. 236, "a dismissal for want of subject-matter jurisdiction can only be without prejudice," *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020), making the Federal Defendants' motion a request for fundamentally different relief.

Even more importantly, the Intervenors are full parties to this action, meaning the Court must consider prejudice to them before granting voluntary dismissal under Rule 41(a)(2).  *See Schneider v. Dumbarton Devs., Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985) ("When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party."); *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987) ("There is therefore a recognized exception to the general principle barring objections by non-settling defendants to permit a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement.  This standard . . . maintains consistency with Fed. R. Civ. P. 41(a)(2) which governs voluntary dismissals of lawsuits."); *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 261 F. Supp. 2d 1002, 1007–08 (N.D. Ill. 2003) (determining that the court could consider "whether the settlement agreement might cause 'plain legal prejudice'" to a non-settling defendant but could not opine on whether the voluntary settlement was contrary to public policy in the context of a 41(a)(2) motion); *see also Se. Fed. Power Customers, Inc. v. Geren*, 514 F.3d 1316, 1318 (D.C. Cir. 2008) (reviewing and reversing the district court's approval of a settlement agreement based on the objections of intervenors); *Nat'l*

*Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 4–5 (D.D.C. 2009) (denying agency's motion to vacate a rule and dismiss for lack of subject matter jurisdiction following settlement with plaintiffs but not intervenors).  The important procedural safeguard found in Rule 41(a)(2) would be a nullity if a voluntary settlement between fewer than all parties automatically divested the Court of subject matter jurisdiction over the entire action.

Thus, the Court does not believe that the Federal Defendants' motion presents a threshold issue that the Court must resolve, at least not before it resolves the motion for voluntary dismissal.  Because the Court will grant the motion for voluntary dismissal, as discussed in the next section, that dismissal moots the remaining motions.  Accordingly, it denies the Federal Defendants' motion to dismiss as moot.

### B.  Motion for Voluntary Dismissal

#### 1.  Legal Standard

Federal Rule of Civil Procedure 41(a) provides the circumstances under which a plaintiff may voluntarily dismiss an action.  If answers have already been submitted and not all parties consent, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  The decision to grant a motion for voluntary dismissal under Rule 41(a)(2) is within the sound discretion of the district court.  *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 304 (D.D.C. 2000); 9 Wright & Miller Fed. Prac. & Proc. Civ. § 2364 (4th ed.).  Voluntary dismissals under Rule 41(a) are generally granted if they were requested in "good faith" and would not cause the defendant to "suffer prejudice other than the prospect of a second lawsuit or some tactical disadvantage."  *Guttenberg v. Emery*, 68 F. Supp. 3d 184, 187 (D.D.C. 2014) (quoting *Conafay by Conafay v. Wyeth Labs* ("*Conafay I*"), 793 F.2d 350, 353 (D.C. Cir. 1986)).

2.  Good faith

The Court does not doubt that Plaintiffs' motion for voluntary dismissal was sought in good faith, and in *WildEarth 2016* and *WildEarth 2020* no party argues otherwise.  In *WildEarth 2021*, Anschutz argues that the failure to include the Intervenor-Defendants until the last minute renders the settlement agreement in bad faith, but the cases they cite only relate to Intervenors' right to be heard on their objections to a settlement at the stage of court approval.  Anschutz Vol. Dismissal Opp'n at 4–5; *see Loc. No. 93*, 478 U.S. at 529 ("[A]n intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree."); *United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 279 (1st Cir. 2000) (acknowledging the same right related to a consent decree); *see also United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) (holding that intervenors had a right to participate in the settlement review proceedings held by the court).

There is no reason to believe that the settling parties have colluded or misled anyone as to "the true nature of their plans on remand" in a way that would undermine their good faith in having negotiated an agreement which, like all settlements, contains benefits and concessions to each side.  *See* Anschutz Vol. Dismissal Opp'n at 4.  The settlement agreement, which does not require any specific outcome or even method for the additional NEPA analysis, makes clear that it is "the final and sole agreement between the Parties with respect thereto."  Settlement Agmt. ¶ 11.  "Ordinarily a settlement between the parties in such cases is motivated by a mutual desire to avoid the expense and risks of litigation."  *Moses-Ecco Co. v. Roscoe-Ajax Corp.*, 320 F.2d 685, 690 (D.C. Cir. 1963).  That the parties perceived a mutual benefit in obtaining some of what they each might have achieved by litigating is not indicative of bad faith.  *See Hisler v.*

*Gallaudet Univ.*, 344 F. Supp. 2d 29, 37 (D.D.C. 2004) (noting that even where voluntary dismissal "is motivated by self-interest, this fact alone is not indicative of bad faith").

3.  Prejudice to Intervenor-Defendants

The central question is whether dismissal would result in legal prejudice to the other parties, in particular, the Intervenor-Defendants.[5]  "[I]t is beyond dispute that, to justify the denial of a motion for voluntary dismissal, a district court must find that dismissal will inflict clear legal prejudice on a defendant."  *Conafay by Conafay v. Wyeth Labs* ("*Conafay II*"), 841 F.2d 417, 419 (D.C. Cir. 1988).  "While the parameters of 'legal prejudice' are not absolutely clear, it is nevertheless certain that the term in this context means 'something other than the necessity that defendant might face of defending another action.'"  *Id.*  Other circuits, and several courts in this district, have utilized a multi-factor test which considers "(1) the defendants' effort and expense for preparation of trial; (2) excessive delay or lack of diligence on the plaintiffs' part in prosecuting the action; (3) the adequacy of plaintiffs' explanation of the need for dismissal; and (4) the stage of the litigation at the time the motion to dismiss is made, specifically whether a motion for summary judgment is pending" in determining whether a defendant would suffer legal prejudice.  *In re Vitamins Antitrust Litig.*, 198 F.R.D. at 304; *see also N.S. ex rel. S.S. v. District of Columbia*, 272 F. Supp. 3d 192, 198 (D.D.C. 2017) (summarizing application of the test in other circuits and noting that "[t]he D.C. Circuit appears to lean toward the more restrictive side of this divide"); *Hisler*, 344 F. Supp. 2d at 37; *Queen v. Schmidt*, No. 10-cv-2017, 2016 WL 2757359, at *2 (D.D.C. May 12, 2016).

---

[5] The Federal Defendants do not object to the dismissal, and the Court does not perceive any prejudice to them in light of the fact that dismissal is pursuant to a settlement agreement they negotiated.

With respect to the first factor, there is no doubt that the Intervenor-Defendants have invested a good deal of time and effort in this long-running action. But that alone is not a sufficient reason to deny a motion for voluntary dismissal. *See Johnson v. Wynne*, 239 F.R.D. 283, 287 (D.D.C. 2006) ("The mere fact that the defendant may have incurred substantial expense prior to dismissal does not amount to legal prejudice."). This factor carries more importance when a dismissal is *without* prejudice, thereby leaving the defendant open to potential new litigation despite already having invested resources defending itself. *See Indep. Fed. Sav. Bank v. Bender*, 230 F.R.D. 11, 15 (D.D.C. 2005) (denying a dismissal without prejudice because it would "shortcut [defendant]'s efforts to bring this litigation to a close, despite significant expenditures of time and money, while leaving open the prospect of future litigation" and ordering the parties to address whether fees or dismissal with prejudice would be appropriate).

Turning to the second and third factors, Plaintiffs have been consistently diligent in prosecuting this action and have provided a more-than adequate explanation for the dismissal, namely the negotiated settlement with the Federal Defendants. *See* Pls.' Vol. Dismissal Mot. at 3; *see generally* Settlement Agmt. While the settlement negotiations have taken some time, that is hardly surprising in a case of this complexity. Moreover, Plaintiffs promptly notified the Court when negotiations began, sought to conserve the resources of the Court and all other parties by moving to stay the case while the settlement was negotiated, and have kept the Court apprised of the progress of those negotiations throughout. *See* Pls.' Mot. Stay Proceedings & Mem. Supp., ECF No. 203; Joint Status Report, Nov. 3, 2021, ECF No. 217. Plaintiffs have also complied with all Court deadlines and timely requested reasonable extensions when necessary. *See Hubbard v. United States*, 545 F. Supp. 2d 1, 8 (D.D.C. 2008) (finding a "demonstrated lack

of diligence and excessive delay" where plaintiff had failed to respond to a pending summary judgment motion for over a year before moving to dismiss).  In addition, it is axiomatic that public policy strongly favors the negotiated resolution of disputes.  *See Am. Sec. Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060 (D.C. Cir. 1986) ("Few public policies are as well established as the principle that courts should favor voluntary settlements of litigation by the parties to a dispute."); *Autera v. Robinson*, 419 F.2d 1197, 1199 (D.C. Cir. 1969) ("Voluntary settlement of civil controversies is in high judicial favor.").

Intervenor-Defendants' argument that they will suffer legal prejudice is primarily relevant to the fourth factor, "the stage of the litigation . . . specifically whether a motion for summary judgment is pending." *In re Vitamins Antitrust Litig.*, 198 F.R.D. at 304.  Although the fact that a dispositive motion is pending is a relevant factor to be considered, "the pendency of that motion alone is not grounds for denying the plaintiff's dismissal motion." *Robinson v. England*, 216 F.R.D. 17, 18 (D.D.C. 2003).  "Granting voluntary dismissal would mean that [Intervenor-Defendants] would lose an opportunity for a favorable final disposition of the case, but that is not important as long as [they] suffer[] no legal prejudice from dismissal." *Conafay II*, 841 F.2d at 420.  Plus, in at least *WildEarth 2016* and *WildEarth 2020*, API's motion to dismiss in this action was filed after the Federal Defendants had already moved for voluntary remand, meaning API "clearly took a large risk that its work would be disregarded entirely" with respect to that motion.  *See id.* (noting that the defendant had filed the motion for summary judgment at issue after the motion for voluntary dismissal was filed).

Intervenor-Defendant Anschutz also raises the possibility that the settlement could compromise its contractual rights with respect to the leases, which contain a clause fixing the lessee's rights at the time of issuance.  Anschutz Vol. Dismissal Opp'n at 6.  Nothing in the

settlement agreement requires vacatur of the leases, prohibits BLM from approving applications

for permits to drill, or forecloses any contractual claim that Anschutz could bring if BLM

ultimately decides to change course.[6]   The Court expresses no opinion on any such claims other

than to note that because they remain available to Anschutz or any other lessee, the settlement

does not dispose of a legal claim or interest in a way that would create legal prejudice.  *See*

*Piedmont Resol., L.L.C. v. Johnston, Rivlin & Foley*, 178 F.R.D. 328, 331 (D.D.C. 1998)

(determining that legal prejudice concerns "'prejudice to some legal interest, some legal claim,

[or] some legal argument' if the dismissal were granted" (quoting *Westlands Water Dist. v.*

*United States*, 100 F.3d 94, 97 (9th Cir. 1996))); *see also Reetz v. Jackson*, 176 F.R.D. 412, 414

(D.D.C. 1997) (noting that legal prejudice does not encompass "the necessity that defendant

might face of defending *or bringing* another action" (quoting *Conafay II*, 841 F.2d at 419)

(alterations omitted & emphasis added)).  In *Kellmer v. Raines*, the district court had denied

voluntary dismissal because it "would deprive directors of their reasonable expectation in a

resolution of their pending motions to dismiss."  674 F.3d 848, 851 (D.C. Cir. 2012) (cleaned

up).  The D.C. Circuit reversed, holding that even though "granting voluntary dismissal would

deprive directors of an opportunity for a favorable final disposition," the "directors suffered no

legal prejudice whatsoever" because "[w]ere [plaintiff] to refile its complaint following a

voluntary dismissal, directors' argument for dismissing the case with prejudice, based on the

---

[6] Separately, NAH Utah requests that "the Court make clear that the settlement agreement and dismissal of the case with prejudice does not in any way limit BLM's ability to process and issue decisions on NAH Utah's [Applications for Permits to Drill] during the remand period." NAH Utah Dismissal Opp'n at 1.  Plaintiffs also agree that "the Stipulated Settlement Agreement does not bar BLM from approving [Applications for Permits to Drill]."  Pls.' Vol. Dismissal Reply, *WildEarth 2021*, ECF No. 80.  The Court notes that BLM is also not obligated to approve such applications, but it provides the requested clarification that nothing in the settlement agreement precludes or otherwise limits BLM's ability to process and resolve those applications. The Court expresses no opinion on whether BLM should treat applications for permits to drill for helium any differently than other oil and gas leases.

purely legal ground of claim preclusion, would remain fully available." *Id.* API's motion for partial dismissal on the basis of claim preclusion in the *WildEarth 2021* litigation would likewise remain fully available in future litigation involving those leases, if any were to occur. *See* API Partial Mot. at 25–30, *WildEarth 2021* (asserting a *res judicata* defense for two of the lease sales).

The statute of limitations defense API advances is slightly different because once BLM completes its additional NEPA analysis, it will issue new decisions that restart the clock and could be challenged in future litigation. *See* Settlement Agmt. ¶ 7.[7] API argues that the Court's failure to rule on its asserted statute of limitations defense would therefore deprive lessees of the very repose and certainty that API claims the statute was intended to create. *See* Vol. Dismissal Opp'n at 2. But this argument is undermined by the fact that API's asserted statute of limitations defense is hardly open-and-shut. *Cf. Arias v. Cameron*, 776 F.3d 1262, 1272–73 (11th Cir. 2015) (weighing the weakness of a claimed statute-of-limitations defense as relevant to the equities of whether to grant a voluntary dismissal). Without expressing any opinion on the merits of that defense, the Court notes that it is highly novel—the relevant provision of the Mineral Leasing Act setting the 90-day limitations period was enacted in 1960, but API does not point to a single case in the 62 years since that has barred a NEPA claim under that provision, and instead asks the Court to part ways with contrary precedent that API believes has since been undermined. *See* API Mot. at 12–17; Pls.' Opp'n to API Mot. at 10.

Nor does ongoing uncertainty, whether over the ultimate status of the leases or BLM's obligations on remand, of itself prejudice any "legal interest . . . legal claim . . . or some legal

---

[7] The Settlement Agreement also provides that "Plaintiffs' sole remedy for any failure by BLM to complete [the additional NEPA analysis] is to rescind this Agreement and reinstate this litigation." Settlement Agmt. ¶ 6. Should that occur, the legal defense of the statute of limitations grounds would remain fully available to API or any other defendant.

argument" available to the Intervenors.  *See Piedmont Resol.*, 178 F.R.D. at 331 (cleaned up).
BLM's decision following the additional NEPA analysis is not a foregone conclusion, and future
litigation regarding the adequacy of future NEPA analysis and any new decisions based on it is
only speculative at this time.  "[T]he threat of future litigation which causes uncertainty is
insufficient to establish plain legal prejudice."  *Westlands Water Dist.*, 100 F.3d at 96.

Finally, even a ruling for API on the merits of its statute of limitations defense would not
necessarily preclude BLM from undertaking additional NEPA analysis on its own initiative.
Dismissal Reply at 5.  Intervenors cite to case law holding that agencies are not required to
supplement their NEPA analysis for every minor change or after federal actions are complete.
*See TOMAC, Taxpayers of Michigan Against Casinos v. Norton*, 433 F.3d 852, 863 (D.C. Cir.
2006) ("[R]eassessments must end at some point, or NEPA simply becomes a tool to stall new
projects indefinitely . . . ." (quotations omitted)).  Those cases are inapposite here because the
limits to what third parties may challenge under NEPA do not define the outer limits of what an
agency may do in its own discretion.  NEPA regulations state that "[a]gencies . . . *[m]ay* also
prepare supplements when the agency determines that the purposes of the Act will be furthered
by doing so."  40 C.F.R. § 1502.9(d)(2) (emphasis added).  The guidance provided by this Court
in its opinions on the Wyoming leases, which utilize similar methodology, is a more-than-
sufficient reason for BLM to think that the purposes of NEPA will be furthered by re-conducting
that analysis.  Accordingly, it is perfectly appropriate for BLM to have committed itself to taking
that action as part of the settlement.[8]

---

[8] The equitable defense of laches asserted by API in the *WildEarth 2021* litigation may or
may not be viable in the event of hypothetical future litigation.  *See* API Partial Mot. at 31–40,
*WildEarth 2021* (raising an alternative defense of laches for 17 leasing decisions); *Petrella v.
Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667–68 (2014) (noting that laches may operate to bar
or limit equitable, but not legal, relief for claims brought within a statutory limitations period "in

4.  Voluntary Remand

Perhaps sensing the weakness of their "legal prejudice" argument, Intervenor-Defendants

argue that this Court should not consider this motion under that framework at all and instead treat

Plaintiffs' motion as a motion for voluntary remand.  Vol. Dismissal Opp'n at 4.  They do not

cite to any case in which a voluntary dismissal in an APA action was considered under the

standard for voluntary remand, and in fact the Circuit has cautioned against granting remands

that in practice "function[] . . . as a dismissal of a party's claims."  *Limnia, Inc. v. United States*

*Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017).  But in any event, Intervenors fail to show

the undue prejudice necessary to preclude a voluntary remand.

Agencies are encouraged "to cure their own mistakes rather than wasting the courts' and

the parties' resources."  *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 23 (D.D.C. 2008)

(quoting *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)).  "Accordingly, courts in

this Circuit commonly grant motions to remand an administrative record to allow an agency to

consider new evidence that became available after the agency's original decision."  *Id.*

Voluntary remand is generally appropriate "as long as the agency's concern is substantial and

legitimate" rather than "frivolous or in bad faith," *id.*, and would not "unduly prejudice the non-

moving party."  *Util. Solid Waste Activities Grp.*, 901 F.3d at 436.  The agency need not "confess

error or impropriety in order to obtain a voluntary remand."  *Limnia, Inc.*, 857 F.3d at 386–87.

Intervenors' protestations about congressional intent and the importance of finality again

overlap with the merits of their statute of limitations argument and presume its correctness—

which as the Court explained above, is far from a settled matter.  *See* Vol. Dismissal Opp'n at 7–

9.  Intervenors' real concern appears to be that BLM may decide to vacate or alter its leasing

---

extraordinary circumstances").  Regardless, even a decision on the merits of the laches defense
also would not prevent BLM from undertaking further NEPA analysis on its own initiative.

decisions after conducting the additional NEPA analysis.  Again, because the settlement does not require BLM to reach a particular conclusion or even to conduct a full EIS, any concerns about the agency's ultimate decision are necessarily speculative.  Still, the Court does not ignore the real possibility that BLM may reach a different decision after undertaking a good-faith effort to evaluate the impacts of its leasing decisions, because the effects of a possible new decision are relevant to determining whether any party would suffer "undue prejudice" from remand to the agency in an APA action.  *See Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 98–99 (D.D.C. 2019) ("An agency's professed intent to revisit the challenged decision is a necessary condition to obtain remand . . . but it is not always a sufficient condition." (citations omitted)).

In *American Waterways Operators*, the state of Washington had implemented a no-discharge zone in the Puget Sound in reliance on the EPA's determination that adequate pump-out facilities were available, which was challenged by shipping interests that argued the EPA should have factored in the costs of compliance.  *Id.* at 99.  At the time the EPA sought remand, the no-discharge zone had already become effective, environmental benefits had begun to accrue, and vessels were already following the timelines to come into compliance, all in reliance on a determination by the EPA that "the State rightfully understood to be final."  *Id.* at 99–100.  The court therefore denied the EPA's remand motion due to the regulatory uncertainty and harm to the intervenor's environmental interests that it would create.  *Id.*

But the uncertainty in *American Waterways Operators* is unlike the uncertainty Intervenors claim they would suffer here because there was no reasonable basis for the Intervenors to rely on the leasing decisions in this case.  In an earlier memorandum opinion, the Court cautioned that although it had not vacated the leases, it would "not hesitate to unwind any improper grants of authority to drill on the Wyoming, Colorado, or Utah land" if necessary, and

"encourage[d] BLM to refrain from investing resources and approving any APDs or otherwise authorizing new oil and gas drilling on the Wyoming, Colorado, or Utah land until it is far more certain that they are supported by adequate NEPA review" because "[a]ny such investments in resources by BLM, or private oil interests for that matter, may prove foolhardy if BLM's new decisions are subsequently vacated rather than remanded."  Mem. Op. Den. Pls.' Mot. Enforce Remand Order, ECF No. 121 (July 19, 2019).  To the extent Intervenors or other private parties actually believed "that their investments in developing the leases would be secure once the MLA's 90-day limitations period expired," Vol. Dismissal Opp'n at 7, such reliance on an untested legal theory in light of the significant ongoing doubt surrounding the validity of the NEPA analysis was unjustified.

*        *        *

The Court understands Intervenors' frustration with the delay and uncertainty that this litigation has caused thus far.  Still, it falls short of clear legal prejudice or undue prejudice.  Rather, "[s]uch is the nature of doing business, especially in an area fraught with bureaucracy and litigation."  *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 282 F. Supp. 3d 91, 104 (D.D.C. 2017).  Accordingly, the Court will grant Plaintiffs' motion for voluntary dismissal with prejudice under Rule 41(a)(2).

### C.  Remaining Motions

Because the Court grants Plaintiffs' motion for voluntary dismissal, there is no longer any controversy over the merits of the pending motions to dismiss by API or the pending motions to remand filed by the Federal Defendants, and those motions are denied as moot.  *See Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) ("[A]n issue is moot when deciding it would have no effect within the confines of the case itself."); *see also* Joint Status Report, March 22,

2022, ECF No. 230 (agreeing that the "pending Remand Motion will become moot if the Court grants Plaintiffs' pending Motion to Dismiss Voluntarily").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss Voluntarily (ECF No. 71) is **GRANTED**, Defendants' Motion to Remand (ECF No. 43) is **DENIED AS MOOT**, American Petroleum Institute's Motion to Dismiss in Part (ECF No. 28) is **DENIED AS MOOT**, and Defendants' Motion to Dismiss (ECF No. 81) is **DENIED AS MOOT**.  The Court will retain jurisdiction for the limited purpose of resolving any motions for attorneys' fees in accordance with the Equal Access to Justice Act.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 1, 2022                                          RUDOLPH CONTRERAS
                                                             United States District Judge